UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

MAYLING TU,                                          :
                                                     :
                              Plaintiff,             :
                                                     :          10 Civ. 4971 (PKC)
              v.                                     :
                                                     :
OPPENHEIMERFUNDS, INC.                               :
and DANIEL KOHN,                                     :
                                                     :
                              Defendants.            :

-------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

Of Counsel:                                    OFI Senior Counsel:

        Barry Asen                                     Melissa Mazer

FIRM:15896934v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................ 3

    A.   OFI's Project Management Teams ..................................................................................... 3

    B.   Plaintiff's Hire as a Senior Project Manager .................................................................... 3

    C.   Kohn's Project Management Team in New York................................................................ 4

    D.   Plaintiff's 2006 and 2007 Year-End Performance Appraisals .......................................... 5

    E.   Plaintiff's Training.............................................................................................................. 6

    F.   Plaintiff's Removal from the Enhanced Online Account Information Project................ 7

    G.   Plaintiff's 360 Leadership Assessment Report................................................................. 8

    H.   Plaintiff's Removal from the Enterprise Fund Master Project ......................................... 9

    I.   Plaintiff's 2008 Mid-Year Performance Appraisal......................................................... 10

    J.   Plaintiff's 2008 Year-End Performance Appraisal ......................................................... 10

    K.   OFI's Reduction-In-Force............................................................................................... 11

    L.   Plaintiff's Discrimination and Retaliation Complaints to HR ........................................ 12

    M.   Additional Undisputed Facts Concerning Plaintiff's Claims ......................................... 13

POINT I

SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
DISCRIMINATION CLAIMS BECAUSE SHE CANNOT ESTABLISH
THAT DEFENDANTS' STATED REASONS FOR THEIR ACTIONS
ARE PRETEXTUAL............................................................................................................ 14

    A.   Plaintiff's Initial Salary Was Lower Than Bejarano And Volino's
        Salaries Because They Were More Experienced And Had Earned
        Higher Salaries Than She Had. ...................................................................................... 15

FIRM:15896934v1

Page

B.  Plaintiff's Denial Of Training Claim Fails Because OFI Declined
    To Reimburse Her For The NYU Course For Legitimate Business
    Reasons, And Plaintiff Concedes That She Can Only Speculate
    That The Real Reason Was Discrimination.................................................. 15

C.  Plaintiff Cannot Show That Defendants' Reason For Her Inclusion
    In The RIF – Inadequate Job Performance – Is A Pretext For Discrimination.............. 16

POINT II

    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
    RETALIATION CLAIMS BECAUSE SHE CANNOT ESTABLISH A
    *PRIMA FACIE* CASE OF RETALIATION OR SHOW THAT DEFENDANTS'
    STATED REASON FOR HER TERMINATION IS PRETEXTUAL ................................. 20

A.  Plaintiff's Alleged July 2007 Oral Complaint to Pullman............................. 21

B.  Plaintiff's August 2008 Oral Complaint to Calandrella ............................. 22

C.  Plaintiff's October 31, 2008 Oral Complaint to Schneider........................... 23

D.  Plaintiff's Written December 9, 2008 Complaint to Schneider....................... 24

CONCLUSION................................................................................. 25

FIRM:15896934v1

# TABLE OF AUTHORITIES

**Page**

## A.  CASES

*Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir, 1994) ......................................18, 19

*Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp.2d 288 ..................................................................23

*Avillan v. Potter*, 2006 WL 3103309 (S.D.N.Y. Nov. 1, 2006)..............................................21, 23

*Bernard v. JP Morgan Chase Bank*, 2011 WL 326513 (2d Cir. Feb. 3, 2011) ......................23, 24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................2

*Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001) .......................................................21

*Drury v. Waterfront Media, Inc.*, 2007 WL 737486 (S.D.N.Y. 2007) ..........................................15

*Griffin v. TNT Internat'l Express*, 2008 WL 697680 (S.D.N.Y. Mar. 12, 2008) ....................18, 23

*Gross v. NBC*, 232 F. Supp.2d 58 (S.D.N.Y. 2002) ......................................................................15

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)..........................................................................20, 21

*Isaac v. City of New York*, 701 F. Supp.2d 477 (S.D.N.Y. 2010) .................................................16

*Julius v. Dept. of Human Resources Adm.*, 2010 WL 1253163 (S.D.N.Y. Mar. 24, 2010) .........14

*King v. Rumsfeld*, 328 F.3d 145 (4th Cir. 2003).............................................................................18

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996)...................................................................16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...........................................................14

*McPhatter v. New York City*, 378 Fed. Appx. 70,
    2010 WL 2025758 (2d Cir. May 24, 2010) ....................................................................23, 24

*Olsson v. Vertis Communications*, 2010 WL 5422514....................................................................21

*Rosinski v. American Axle & Mfg., Inc.*, 2010 WL 3402984 (2d Cir. Aug. 31, 2010).................22

*Sassaman v. Gamache*, 566 F.3d 307 (2d Cir. 2009) ....................................................................14

*Sharpe v. MCI Communications Services, Inc.*, 684 F. Supp.2d 394 (S.D.N.Y. 2010) ..........22, 24

*Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir. 2001)................................2, 23

*Taitt v. Chemical Bank*, 849 F.2d 775 (2d Cir. 1988) ...................................................................14

FIRM:15896934v1

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) .......................................14, 17

*Weiss v. Morgan Stanley Investment Mgmt.*, 345 Fed. Appx. 713,
   2009 WL 2958703 (2d Cir. Sept. 16, 2009) ............................................................................25

*Weit v. Flaum*, 258 A.D.2d 286 (1ˢᵗ Dep't 1999)..........................................................................18

**B.    STATUTES**

Civil Rights Act of 1866, 42 U.S.C. § 1981 ..................................................................................14

Federal Rule of Civil Procedure 56 ..................................................................................................2

New Yor City Human Rights Law, N.Y.C. Adm. Code § 8-107 *et seq.* .......................................14

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.............................................14

FIRM:15896934v1

## PRELIMINARY STATEMENT

OppenheimerFunds Inc. ("OFI") employed Plaintiff Mayling Tu as a Senior Project Manager ("SPM") in New York.  She reported to Defendant Dan Kohn, an OFI Vice President ("VP").  In January 2009, in the middle of the U.S. financial meltdown, OFI terminated her employment in a reduction-in-force ("RIF"), along with approximately 250 other employees in New York and Denver.  OFI's decision to include Plaintiff in the RIF was based on her well-documented inadequate job performance in 2008.  Nonetheless, she claims that: (1) the real reasons for her termination were her sex, Taiwanese national origin, and prior complaints about Kohn, (2) she was paid less when hired than two other SPMs because of her sex and national origin, and (3) Kohn denied her technical training because of her sex and national origin.

Despite discovery, Plaintiff has not adduced material evidence to support her claims, which consist wholly of speculation, conclusory statements and wishful thinking.  At her deposition, Plaintiff testified that she performed well as a SPM, but that Kohn - and only Kohn - discriminated and retaliated against her.  Yet the evidence shows that three VPs asked Kohn to remove her from their projects because she performed poorly and that several colleagues on those projects complained in writing about her performance as well.  Their criticisms were consistent: she functions like a lower-level Project Coordinator, displaying ineffective leadership and communication skills, indecisiveness, and inadequate knowledge of OFI's business, products and systems.  When deposed, Plaintiff agreed with many of these criticisms!

Plaintiff also testified that she was not aware of any facts to show that Kohn disliked women or Asians.  All she could muster was that Kohn might have discriminated against her because of a stereotype of the Taiwanese people as "too nice" and "timid," and Kohn repeatedly said that she was "too nice."  Plaintiff also has no factual basis to dispute that after Kohn removed her from one of the projects, he replaced her with another SPM, Linda Tan Mui, whose

1

father was born in Taiwan and her mother was born in China, and that Mui was not included in the RIF and was later promoted by Kohn.

Insofar as retaliation, the Second Circuit has directed that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Here, the day after OFI's Chief Executive Officer announced that there would be a RIF - and no doubt believing that her best defense to the RIF was a good offense - Plaintiff complained to Patrick Schneider of OFI's Human Resources Department ("HR") about Kohn. Prior to that complaint, however, she had already been removed as the SPM from two projects; several colleagues had given her low grades on her performance; and Kohn had advised her that her employment could be terminated unless her performance improved. These well-documented, gradual adverse job actions, which support Plaintiff's inclusion in the RIF, belie any inference of retaliation.

The Supreme Court has long instructed that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Plaintiff's claims are unsupportable. Pursuant to Fed. R. Civ. P. 56, and on the basis of the deposition testimony (including Plaintiff's numerous admissions), supporting affidavits and exhibits, and the applicable law, Defendants submit that they are entitled to judgment as a matter of law.[1]

---

[1] The material facts are contained in the accompanying affidavits of Daniel Kohn, Laura Leitzinger, Jodi Pullman, Enrique Smith, Ronald Chibnik, Brett Stein, Nicholas Apel, Patrick Schneider, and Christine Calandrella, and the exhibits attached to all of them, as well as in the deposition testimony of Plaintiff, Linda Tan Mui, Gang Li and Andrew Merckx, excerpts of which are attached to the accompanying affidavit of Barry Asen, Esq. The deposition testimony, affidavits and exhibits are designated as "Dep.," "Aff." and "Ex." Although Defendants do not agree with much of Plaintiff's deposition testimony as set forth herein, they accept it as true for purposes of this motion only.

2

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   OFI's Project Management Teams

OFI's project management teams in New York and Denver, Colorado, include, among other positions, Senior Project Managers ("SPMs"), Project Managers ("PMs"), and Project Coordinators ("PCs").  SPMs and PMs are responsible for, *inter alia*, ensuring that project goals and resources are well defined; a plan is created to fulfill the goals; the project stays on track in terms of its scope, budget and time line; the project team members fulfill their responsibilities; and issues and risks that arise are promptly addressed.  SPMs and PMs differ in terms of experience, overall competence, assignments, and compensation.  SPMs generally are assigned to larger, more complex projects, while PMs handle smaller, more straightforward ones.  In contrast, PCs do not lead projects; they are responsible for administration and support.  (Kohn Aff. ¶¶ 8-10; Pullman Aff. ¶¶ 4-5)

### B.   Plaintiff's Hire as a Senior Project Manager

From October 2001 to July 2004, Plaintiff was employed as a PM at J.P. Morgan Chase, where her last annual salary was $90,000.  After a lengthy period of unemployment, she accepted a position in March 2005 as a PM consultant at Morgan Stanley, where she was paid by the hour and did not receive any benefits.  In February 2006, she was unemployed again after she rejected Morgan Stanley's offer of full-time employment in a junior administrative capacity.  (Tu Dep. 20-28; Schneider Aff. ¶ 13 and Exs. H, I)

When Jodi Pullman, who later became Plaintiff's first supervisor, interviewed her in April 2006, she thought that Plaintiff lacked the experience to be an SPM and urged her hire as a PM.  Plaintiff had other prospects, however, and sought an annual salary of $125,000.  To satisfy her request and to fit her within OFI salary guidelines, OFI met the $125,000 and offered her an SPM position.  (Pullman Aff. ¶¶ 7-8 and Exs. A, B; Tu Dep. 40-41)

3

Plaintiff alleges that her initial $125,000 salary in May 2006 was less than other white, male SPMs' salaries. OFI pays new hires based on their past experience and compensation. SPMs Seffi Bejarano and Tony Volino had more experience and earned higher salaries than Plaintiff did. Bejarano had been a project/program manager since 1994 and supervised over 60 persons. He earned $135,000 prior to his hire. OFI matched that salary. Similarly, Volino had almost 10 years of project management experience when he joined OFI. He had been a Director at Thomson Financial, was managing 40 employees, and was the lead project manager for a $91 million project. He previously had been a lead project manager at Deloitte Consulting. Volino earned an annual salary of $149,100 when he applied to OFI. His starting salary with OFI was less - $140,000 per year. (Complaint ¶ 16; Schneider Aff. ¶¶ 13-15 and Exs. J-M)

C.   **Kohn's Project Management Team in New York**

When Plaintiff was hired, the New York project management consisted of SPMs Pullman and Linda Mui. Ketan Patel was then hired as a PM, and Kohn joined as a VP. Pullman reported to Kohn, who reported to Senior VP Laura Leitzinger. Kohn then hired Bejarano, Volino, Allyson Fischer and Roni Givati, and approved Lydia Norman's request to transfer to New York. Fischer resigned, and after Pullman was promoted twice based on Kohn's recommendations, she left the team in February 2008 to head OFI's potential disaster recovery efforts. At the time of the January 2009 RIF, the gender and national origin of the respective members of the New York project management team was as follows (Kohn Aff. ¶¶ 4-8):

| Name | Position | Gender | National Origin |
|------|----------|--------|-----------------|
| Seffi Bejarano | SPM | Male | Israeli-American |
| Tony Volino | SPM | Male | Italian-American |
| Linda Mui | SPM | Female | Taiwanese/Chinese-American |
| Mayling Tu | SPM | Female | Taiwanese-American |
| Roni Givati | SPM | Female | Israeli-American |
| Ketan Patel | PM | Male | Indian/Asian-American |
| Lydia Norman | PMO Analyst | Female | American |

4

Members of Kohn's team never worked together on the same project, except when Mui and Plaintiff briefly worked together during a project transition period. Other SPMs, including Mui, did not know if Plaintiff performed well on her projects. (Tu Dep. 55-57, 67-68, 332-33)

**D.     Plaintiff's 2006 and 2007 Year-End Performance Appraisals**

In December 2006, Pullman completed Plaintiff's first appraisal. She gave her a rating of "3" - "Meets Company Standards" - the midpoint of five possible performance ratings. Pullman noted areas in which she could improve, *e.g.*, "Mayling could learn to be more assertive in her communications - at times she seems indecisive or perhaps too willing to manage by consensus." (Pullman Aff. ¶¶ 14-15 and Ex. F at 6)  Plaintiff agrees with this criticism. (Tu Dep. 82)

In December 2007, Pullman completed Plaintiff's second appraisal, and again gave her a "3" rating. The appraisal, though, contained substantial criticisms based on, *inter alia*, negative feedback that Pullman had received from persons who worked with her on projects. For example, Frank Ambrosia, on the Prism project, wrote that Plaintiff shied away from answering questions that were posed directly to her. (Pullman Aff. ¶¶ 16-17 and Exs. G, H) Nick Apel, with whom Plaintiff worked on the Enhanced Online Account Information ("EOAI") project, was even more critical. In a November 7, 2007 e-mail to Pullman, he stated:

> I'd like to see Mayling's communication style be more concise and to the point.
>
> Mayling demonstrates strong Project Coordinator skills, but less strong Project Management skills. …
>
> Recommended Classes for Mayling: Situational Leadership (this is by far the class that I feel Mayling could benefit the most from). [Apel Aff. ¶¶ 3-4 and Ex. A; Pullman Aff. ¶ 18 and Ex. I]

Pullman noted these and other criticisms in Plaintiff's 2007 appraisal. She wrote: "Mayling's negotiation style is to search for a group consensus, which leads others to conclude that she is hesitant to lead decision making." Pullman pointed out that "project teams often feel

5

that she is not leading them as effectively as is expected" of an SPM. She added: "Mayling demonstrates strong Project Coordinator skills, but less strong Project Management skills." (Pullman Aff. ¶¶ 20-21 and Ex. G at 2-5) Plaintiff agrees that she hesitated to lead decision-making, and had strong PC skills, but less strong SPM skills. She also confirms that she does not allege that Pullman and Apel discriminated against her. (Tu Dep. 51, 63-64, 120, 125)

## E.     Plaintiff's Training

Pullman advised Plaintiff during her job interview that a technical background was not necessary. OFI values SPMs more for their project management and leadership skills than for their technical knowledge. While most projects are technical in nature, SPMs can acquire the technical knowledge needed by asking the project technical leads, and by reviewing written materials concerning the technical issues. Pullman is a prime example of a successful SPM without a technical background. (Kohn Aff. ¶ 13; Pullman Aff. ¶¶ 2, 6; Tu Dep. 263-64)

SPMs had an annual training plan, and could take in-house and outside courses at OFI's expense. Kohn and Pullman generally granted training requests as long as the courses were relevant to job responsibilities and the cost did not exceed the employee's annual training budget. In 2006 and 2007, neither Kohn nor Pullman denied any requests by Plaintiff to be reimbursed for a technology-related course. (Pullman Aff. ¶ 12; Kohn Aff. ¶ 14)

Early in 2008, Plaintiff told Kohn that she wanted to enroll in a four-course, technology program at NYU. She gave Kohn the program information, dated 03/04/08, stating that the tuition for each course was more than $1,000; thus, taking two courses in 2008 would have exceeded an SPM's $1,800 annual training budget. Also, two courses, "Database Design and Development" and "Data Communications Networks," were not necessary to an SPM's required skill set. Kohn and Leitzinger agreed not to authorize reimbursement; no other SPM took the

6

NYU course either. Plaintiff admits that she could have personally paid for the course as she was then earning $130,000. (Kohn Aff. ¶ 16 and Ex. A; Leitzinger Aff. ¶ 4; Tu Dep. 93-95)

In 2008, Kohn urged Plaintiff to take certain online technology courses. He approved four courses that she requested, all relevant to her SPM role: Situational Leadership, Interaction Skills for Success, Communicating in Difficult Situations, and Negotiating Skills. Their total cost was $1,850. Kohn's approval was consistent with Apel's advice: "Recommended Classes for Mayling: Situational Leadership ... [which] is by far the class that I feel Mayling could benefit the most from." (Apel Aff. ¶ 3 and Ex. A; Tu Dep. 281; Kohn Aff. ¶¶ 15, 17 and Ex. B)

Describing her own development goals in her 2007 year-end appraisal, Plaintiff wrote that she wanted to build her knowledge of OFI's business, products and systems; she did not write that she wanted more technical training. Likewise, on her 2008 year-end appraisal, she wrote that obtaining additional technical knowledge was no longer a key personal development goal for her. Plaintiff also admits that it is speculation on her part that Kohn denied reimbursement for technical training, including the NYU course, because of her gender or national origin. (Tu Dep. 128, 233, 285-86; Pullman Aff. Ex. I at 8; Kohn Aff. Ex. P at 6)

**F.    Plaintiff's Removal from the Enhanced Online Account Information Project**

When Kohn became Plaintiff's direct supervisor, Pullman advised him that Apel was extremely unhappy with Plaintiff's performance on the EOAI project. On February 13, 2008, Apel told Kohn that Plaintiff functioned as a good PC, but was ineffective as an SPM. He said that she lacked basic project management skills, was not leading the project, and all she would do was argue with him when he tried to talk to her about a performance issue.[2] The next day, Kohn forwarded his notes of their conversation to Apel, who replied that the notes were accurate,

---

[2]  Pullman, Kohn and VP Enrique Smith agree that Plaintiff was argumentative and defensive and dealing with her about a performance issue was frustrating. (Pullman Aff. ¶ 9; Kohn Aff. ¶ 18; Smith Aff. ¶ 6)

7

and then wrote additional criticisms, which he highlighted: Plaintiff did not understand the project's business goals; she had ineffective decision-making and communication skills; she frustrated the team members; and she was "very counter productive." (Kohn Aff. ¶¶ 18-19 and Exs. C-E; Apel Aff. ¶¶ 6-7 and Exs. A, B; Pullman Aff. ¶¶ 18-19)

In February 2008, Kohn spoke with Apel's supervisor, VP Brett Stein, who said that he and Apel wanted Plaintiff removed from the project because she added no real value. When Kohn consulted Leitzinger, they agreed that Plaintiff's relationship with the EAOI project team had broken down and removed her. (Stein Aff. ¶ 4; Apel Aff. ¶ 4; Kohn Aff. ¶ 20-21; Leitzinger Aff. ¶ 5) Plaintiff does not claim that Stein and Apel discriminated against her, and essentially concedes that she acted more like a PC than an SPM on the project. (Tu Dep. 63-64, 185-87)

## G.    Plaintiff's 360 Leadership Assessment Report

In August 2008, Plaintiff received a 360 Leadership Assessment Report, which gives an employee feedback on how she is viewed by her manager and co-workers. The employee and her manager jointly select the co-workers who will rate her. The employee also rates herself for comparison purposes. The overall ratings Plaintiff received from herself, Kohn and co-workers differed, but not dramatically so: (1) Focus on Results - Plaintiff rated herself 3.50, higher than Kohn's 2.88; (2) Be a Change Agent - she rated herself 3.11, slightly higher than Kohn's 2.90; (3) Break Down Silos - she gave herself 2.92, Kohn rated her better at 3.25; (4) Building Strong Teams - she viewed herself as 3.25, Kohn rated her higher at 3.43. Moreover, the comments of co-workers confirmed Kohn's views:

> Verbal communications need to be improved, i.e., expressing herself clearly and succinctly.
>
> Mayling should be more proactive and take a stronger leadership role in her projects rather than letting other people drive the projects not always necessarily in the right direction.

8

> Leadership skills – Work on ability to effectively influence others – Work on understanding the big picture and not just focusing on the details.
>
> Does not display an ability to rally the team toward a solution; only the presence to come along with the team and track its progress.

(Calandrella Aff. ¶¶ 1-8 and Ex. A at 7-9, 14)  When deposed, Plaintiff admitted that she agrees with these unfavorable comments for the most part.  (Tu Dep. 178-84)

In August 2008, Christine Calandrella, an HR Relationship Manager, met with Plaintiff in Denver to discuss her 360 Assessment.  Plaintiff said that she was frustrated with some of Kohn's ratings.  Plaintiff admits that she did not say that Kohn was discriminating against her on the basis of her gender or national origin.  Calandrella advised Plaintiff that she could speak to Pat Schneider, the HR Manager assigned to employees on Kohn's team, but she opted not to contact him at that time.  Calandrella mentioned the discussion to Schneider, but never spoke to Kohn or anyone else about it.  (Calandrella Aff. ¶¶ 2-5, 9-10; Tu Dep. 307-09, 311-14) [3]

## H.    Plaintiff's Removal from the Enterprise Fund Master Project

After Plaintiff was removed from the EAOI project in February 2008, Kohn assigned her to be the SPM on the Enterprise Fund Master ("EFM") project.  But on April 11 and 16, 2008, VP Enrique Smith, who was one of EFM's business sponsors, advised Kohn that Plaintiff was not grasping the overall business objectives of the project.  Kohn alerted Plaintiff to Smith's concerns.  (Kohn Aff. ¶¶ 22-23 and Ex. F; Smith Aff. ¶¶ 2-3; Tu Dep. 149-52, 155)

Subsequently, Smith and Ron Chibnik, another VP on the project, asked Kohn to remove Plaintiff.  After Kohn and Leitzinger discussed their request, she was removed.  Plaintiff does not allege that Smith and Chibnik discriminated against her, and concedes that she has no reason to

---

[3]  Other HR Managers met at or about the same time with other members of the project management team to discuss their respective 360 Assessments.  The managers were assigned to employees with whom they did not have a business or personal relationship.  (Calandrella Aff. ¶ 2)

believe that they were not giving their honest opinions about her.  Kohn selected Mui to replace

Plaintiff on the project and later promoted her.  Mui's father was born in Taiwan and her mother

in China.  (Smith Aff. ¶ 8; Chibnik Aff. ¶¶ 6-7; Kohn Aff. ¶¶ 24, 25, 41 and Ex. G; Leitzinger

Aff. ¶ 5; Tu Dep. 64-65, 155-56, 203-04; Mui Dep. 44, 97-98)

## I.      Plaintiff's 2008 Mid-Year Performance Appraisal

Prior to removing Plaintiff from the EFM project, Kohn gave her a written mid-year

appraisal, which Leitzinger reviewed and approved.  Among Kohn's comments: (1) On EOAI, it

"was generally agreed that Mayling acted more as a project coordinator than a project manager

…."     (2) On EFM, "the day-to-day business lead [said] that Mayling simply wasn't

understanding … what the project was setting out to accomplish."  Plaintiff admits that Kohn

told her that she was in danger of losing her job.  (Kohn Aff. ¶¶ 26-28 and Ex. I at 1, 2, 6;

Leitzinger Aff. ¶ 6; Tu Dep. 158, 202-03)

## J.      Plaintiff's 2008 Year-End Performance Appraisal

To help prepare Plaintiff's year-end appraisal, Kohn sent an e-mail on October 29, 2008

to the members of the EFM project team and asked them to complete a questionnaire concerning

her performance.[4]  Five EFM team members answered the questionnaire: Ron Chibnik, Lauren

Venezia, Andrew Slack, Nguyen Linh, and Andrew Merckx.  (Kohn Aff. ¶ 29 and Ex. J)

Chibnik rated Plaintiff's performance as Needs Improvement in five areas.  Venezia rated

her performance as Needs Improvement in three and Does Not Meet in two others.  Slack rated

Plaintiff as Needs Improvement in six areas and Does Not Meet in two.  Nguyen rated Plaintiff

as Needs Improvement in five areas, between Needs Improvement and Does Not Meet in two,

and Does Not Meet in one.  The theme throughout these assessments was that Plaintiff did not:

(1) communicate effectively, (2) listen effectively, (3) run effective meetings, (4) force critical

---

[4]  Kohn sent similar requests to persons working with other SPMs and PMs on his team.  (Kohn Aff. ¶ 29)

thinking from team members, and (5) drive the team's decisions.  In short, Plaintiff did <u>not</u> successfully lead the project team.  Plaintiff does not claim that Chibnik, Venezia, Nguyen and Slack discriminated against her.  Nor does she have reason to believe that they were not giving their honest opinions about her. (Kohn Aff. ¶ 35 and Exs. K-N; Tu Dep. 65-66, 203-09)[5]

With Leitzinger's approval, Kohn rated Plaintiff on her 2008 year-end appraisal as Needs Development, a "4" - one performance level lower than her 2006 and 2007 appraisals - based on the above negative assessments, her removal from two projects, and his interactions with her. (Kohn Aff. ¶ 36 and Ex. P)  Among his specific comments were:

> On the EAOI project, the decision to remove Mayling [was] based on a consensus that Mayling was providing some amount of project coordination but clearly was not leading the team effectively. [*Id.* at 1]

> On the EFM initiative ..., it was the collective opinion of the project team members that she was not leading the project nor directing the day-to-day efforts of the project team.... [*Id.* at 2]

> Within PGD, a consistent standard which is applied to all Senior Project Managers is that they should be successful on any project they are assigned with OFI.  This has not been the case with Mayling. [*Id.* at 11]

If there had not been a RIF, Plaintiff would not have been terminated based on the "Needs Improvement" rating.  She would have been placed on a performance improvement plan. She would have been terminated only if her performance did not improve. (Kohn Aff. ¶ 37)

**K.     OFI's Reduction-In-Force**

On October 30, 2008, OFI's Chief Executive Officer announced in an e-mail sent to all employees that there would be a RIF at OFI in the near future.  Plaintiff received and read the announcement.  Leitzinger asked Kohn to recommend an employee on his team for the RIF

---

[5]  Only Andrew Merckx viewed Plaintiff's performance as satisfactory.  He rated her performance as "Needs Improvement" in only one area: listens effectively. (Kohn Aff. ¶ 34 and Ex. O)

11

based on their performance. Kohn recommended Plaintiff based on: (1) her removal from two projects in 2008 (no one else had been removed from a project in 2008), (2) her colleagues' negative assessments of her performance, (3) her deficient mid-year appraisal, and (4) his intention to rate her as Needs Improvement in her year-end appraisal, which was lower than he intended to rate anyone else. Leitzinger agreed with Kohn and had the final say. (Schneider Aff. Ex. A; Kohn Aff. ¶¶ 39-40; Leitzinger Aff. ¶¶ 7-8; Tu Dep. 335-36)

On November 11, 2008, Leitzinger submitted her RIF list to HR. It included Plaintiff and six persons on the project management team in Denver. Other than Plaintiff and Louis Ragusa in Denver, no one had received a "4" rating on their 2007 appraisal or would receive a "4" on their 2008 appraisal. Other than Plaintiff, four men and two women were included in the RIF; other than Plaintiff, no one with an Asian background was included; Mui (Taiwanese/Chinese) and Patel (Indian) remained. Leitzinger made the ultimate RIF decisions. On January 30, 2009, the RIF was implemented. (Leitzinger Aff. ¶ 9 and Ex. A; Kohn Aff. ¶ 8; Schneider Aff. ¶ 5)

**L.      Plaintiff's Discrimination and Retaliation Complaints to HR**

According to Plaintiff, on October 31, 2008, the day after the RIF announcement, she telephoned Pat Schneider of HR and briefly complained about Kohn. They spoke again on November 5, at which time Plaintiff said that Kohn had constantly criticized her and unfairly removed her from a project. Plaintiff did not mention her gender or national origin, but testified that she said it was "illegal discrimination," and just "didn't list them out." (Tu Dep. 315-21)

Schneider did not tell Kohn or Leitzinger about Plaintiff's complaint right away. Instead, he waited until November 12, 2008, the day after Leitzinger submitted her RIF list to HR. He delayed telling them because he wanted to avoid any possibility of their RIF selections being affected by Plaintiff's complaint, that is, either selecting her for layoff because she complained or not selecting her for layoff to avoid the possibility of a retaliation claim. A month later, on

12

December 9, Plaintiff complained in writing to Schneider about gender, race, national origin and religious discrimination, and retaliation. (Schneider Aff. ¶¶ 8, 11 and Exs. B, C and G)[6]

Before Leitzinger submitted her RIF list on November 11, 2008, neither Leitzinger nor Kohn knew that Plaintiff had complained about discrimination or retaliation.  Kohn's RIF recommendation and Leitzinger's RIF decision were based on their views and other colleagues' views of Plaintiff's job performance.  Both Kohn and Leitzinger vehemently deny Plaintiff's discrimination and retaliation claims.  Plaintiff does not allege that Leitzinger discriminated or retaliated against her. (Kohn Aff. ¶ 44; Leitzinger Aff. ¶ 10 and Ex. E; Dep. 60-61)

**M.    Additional Undisputed Facts Concerning Plaintiff's Claims**

Plaintiff concedes that she: (1) does not allege that anyone besides Kohn discriminated and retaliated against her, (2) does not know if Kohn dislikes women or Asians; (3) never heard anyone make a discriminatory remark about her; and (4) does not allege that anyone else on Kohn's team should have been terminated in the RIF instead of her.[7]  Plaintiff thought that Kohn might have discriminated against her because of her national origin because he told her that she was "too nice" and once said she was "meek" or "timid."  While Kohn did not mention her national origin, Plaintiff explained that a stereotype exists that Taiwanese people are not aggressive, "[t]hey're more submissive and they're more meek, and they listen to basically what their managers tell them." (Tu Dep. 44-48, 68, 288-89, 337)

---

[6]  Although not material to this motion, Schneider attests that Plaintiff did not raise any issue about discrimination in her first complaint to him and, after investigating both that complaint and her subsequent written complaint, he concluded that there was no violation of OFI policies and no unlawful conduct. (Schneider Aff. ¶¶ 7-15 and Exs. C-M)

[7]  Although Plaintiff testified that she does not contend that someone else should have been terminated in the RIF instead of her, she may contend in her opposition papers that PM Ketan Patel, an Indian-American, should have been selected in her place. If she does, the Court should be aware that Patel's performance was rated "3," Meets Company Standards, on his 2007 and 2008 year-end appraisals; in addition, the written assessments of Patel, from persons of his project teams, were better across-the-board than the assessments that Plaintiff received. (Kohn Aff. ¶ 40 and Exs. Q-S)

13

Kohn also has a Chinese background.  His father and his family escaped religious persecution in Germany in 1939, lived in Shanghai for many years, and then immigrated to the United States.  Kohn is a first-generation American. (Kohn Aff. ¶ 43)

## POINT I

### SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S DISCRIMINATION CLAIMS BECAUSE SHE CANNOT ESTABLISH THAT DEFENDANTS' STATED REASONS FOR THEIR ACTIONS ARE PRETEXTUAL.

Plaintiff alleges that she was discriminated against because of her sex and national origin in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the New York City Human Rights Law ("NYCHRL").  She specifically asserts that she was initially paid a lower salary than two other SPMs, denied technical training, and terminated in the RIF, all because she is a woman and her national origin is Taiwanese. [8]

Discrimination claims are analyzed under the Supreme Court's framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Plaintiff has the initial burden to establish a *prima facie* case by demonstrating: (1) membership in a protected class, (2) qualification for the position, (3) an adverse employment action, and (4) the adverse action occurred under circumstances that raise an inference of discrimination. *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009).  Plaintiff's initial burden is *de minimis.  Id.*  If Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory basis for their actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Once they do so, Plaintiff must show that the reasons proffered were pretexts for discrimination. *Id.*

---

[8]  Discrimination claims brought under Title VII, § 1981 and the NYCHRL are subject to the same legal standards for purposes of summary judgment. *Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir. 1988) (Title VII and § 1981); *Julius v. Dept. of Human Resources Adm.*, 2010 WL 1253163, at *5 (S.D.N.Y. Mar. 24, 2010) (Castel, J.) (Title VII and NYCHRL).

14

Given the *de minimis* nature of Plaintiff's *prima facie* case, Defendants do not contest, for purposes of this motion, that she may be able to establish one. Nonetheless, as Defendants next show, Plaintiff's three claims should be dismissed as a matter of law because she cannot show that their reasons for their actions are pretexts for sex or national origin discrimination.

**A.**   **Plaintiff's Initial Salary Was Lower Than Bejarano And Volino's Salaries Because They Were More Experienced And Had Earned Higher Salaries Than She Had.**

Plaintiff admits that she is not aware of any facts that show that the gender or national origins of Seffi Bejarano and Tony Volino were the reasons they were paid more than she was paid when they were hired. (Tu Dep. 260)  In contrast, Defendants have shown that their salaries were higher because they were more experienced and had earned substantially higher salaries than she did at their respective former jobs.  In fact, OFI only matched Bejarano's salary and Volino took a pay cut to join OFI. (Schneider Aff. ¶¶ 13-15 and Exs. H-M)

Summary judgment is appropriate where an employer has opted to pay an employee more than another employee based upon their respective prior experience and salary. *See Drury v. Waterfront Media, Inc.,* 2007 WL 737486, at *4-5 (S.D.N.Y. 2007) ("Salary matching and experienced-based compensation are reasonable, gender neutral business tactics...."); *Gross v. NBC,* 232 F. Supp.2d 58, 71 n.9 (S.D.N.Y. 2002) (same).  Plaintiff's salary discrimination claim should be dismissed as a matter of law.

**B.**   **Plaintiff's Denial Of Training Claim Fails Because OFI Declined To Reimburse Her For The NYU Course For Legitimate Business Reasons, And Plaintiff Concedes That She Can Only Speculate That The Real Reason Was Discrimination.**

In March 2008, Plaintiff told Kohn that she wanted to take a four-course program at NYU.  Each course cost more than $1,000, Plaintiff's annual training budget was only $1,800, and two of the courses, in Kohn and Leitzinger's view, were not necessary parts of an SPM's skill set.  After Plaintiff was told that OFI would not reimburse her, she declined Kohn's

15

suggestion to enroll in certain online technology courses.  Instead, she enrolled in and was reimbursed for four other courses, including Situational Leadership, a skill previously found wanting in her. (Kohn Aff. ¶¶ 14-16 and Ex. A; Leitzinger Aff. ¶ 4; Pullman Aff. ¶¶ 11-21)

Plaintiff has not adduced any evidence to show that Kohn and Leitzinger declined her request to be reimbursed for the NYU course or any other courses for discriminatory reasons. Rather, she testified that it "would be speculation on my part" that discrimination was the reason. (Tu Dep. 285-86)   This Court has instructed that "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Isaac v. City of New York,* 701 F. Supp.2d 477, 485 (S.D.N.Y. 2010) (Castel, J.) (quoting *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996)).   Given that Plaintiff cannot demonstrate pretext, her discriminatory denial of training claim should be dismissed as a matter of law.[9]

**C.     Plaintiff Cannot Show That Defendants' Reason For Her Inclusion In The RIF – Inadequate Job Performance – Is A Pretext For Discrimination.**

There is overwhelming evidence that Kohn, Leitzinger and others at OFI were not satisfied with Plaintiff's job performance:

a. <u>November 2007</u> - Stein and Apel told Pullman that they were unhappy with Plaintiff's performance on the EOAI project, while Ambrosia said that she shied away from answering questions by the Prism project team and did not deal forcefully enough with business issues. (Stein Aff. ¶¶ 4-5; Apel Aff. ¶¶ 2-4 and Ex. A; Pullman Aff. ¶¶ 17-18 and Exs. H, I)

---

[9]   The criticisms of Plaintiff's performance focused on her lack of leadership, communications and decision-making skills.  But even as she seems to believe, her problem was a lack of a technical background, the first NYU course offered ran from May to July 2008 (Kohn Aff. Ex. A at 2-3), far too late to provide her with the technical skills to dramatically improve her performance and prevent her layoff six months later.  In addition, Plaintiff's insistence that her lack of technical knowledge precluded her from effectively performing as an SPM is a tacit admission that she was not doing an effective job, which confirms that Defendants' reason for her layoff in the RIF was reasonable and nondiscriminatory.

16

b. <u>December 2007</u> - Pullman wrote on Plaintiff's appraisal that she lacks strong project management skills and should improve her leadership skills. (Pullman Aff. ¶¶ 20-21 and Ex. G)

c. <u>February 2008</u> - Plaintiff was removed from EOAI after Stein and Apel asked that she be removed. (Stein Aff. ¶ 4; Apel Aff. ¶¶ 5-7 and Ex. B; Kohn Aff. ¶¶ 18-21 and Exs. C-F)

d. <u>April 2008</u> - Smith voiced his concern to Kohn about Plaintiff's performance on the EFM project. (Smith Aff. ¶¶ 2-3; Kohn Aff. ¶¶ 22-23 and Ex. F)

e. <u>August 2008</u> - Plaintiff's colleagues criticized her communication, leadership and decision-making skills in her 360 Leadership Assessment. (Calandrella Aff. ¶ 8 and Ex. A at 14)

f. <u>September 2008</u> - Kohn warned Plaintiff that she was in danger of losing her job. Her mid-year appraisal stated that she functioned like a PC on EOAI, and was not effectively leading the EFM project.   (Kohn Aff. ¶¶ 26-28 and Ex. I at 1, 2, 6; Tu Dep. 158, 202-03)

g. <u>October 17, 2008</u> – Plaintiff was removed from EFM at the request of Smith and Chibnik. (Kohn Aff. ¶ 24 and Ex. G; Smith Aff. ¶ 8, Chibnik Aff. ¶¶ 6-7; Leitzinger Aff. ¶ 5)

h. <u>Late October 2008</u> - Chibnik, Venezia, Slack and Nguyen, all of whom worked with Plaintiff on the EFM project, criticized her job performance. (Kohn Aff. ¶¶ 8-11 and Exs. K-N)

i. <u>December 2008</u> - Kohn, with Leitzinger's approval, rated Plaintiff's overall performance in 2008 as Needs Improvement. (Kohn Aff. ¶ 36 and Ex. P)

This inadequate job performance led Kohn to recommend to Leitzinger that Plaintiff be included in OFI's January 2009 RIF, and Leitzinger to make the final decision to place Plaintiff on the RIF list. (Kohn Aff. ¶¶ 39-41; Leitzinger Aff. ¶¶ 7-9)

To withstand summary judgment on her discriminatory discharge claim, Plaintiff must come forward with evidence that shows that Defendants' above reason for her termination in the RIF is pretextual. *Burdine*, 450 U.S. at 252-53. It appears that Plaintiff will argue that other OFI

17

employees, *e.g.,* Linda Mui, Gang Li and Andrew Merckx, believed that she did a good job as an SPM. She also may argue that PM Ketan Patel should have been terminated and not her. These arguments would not suffice to overcome summary judgment.

First, "[s]tatements by co-workers or subordinates to the effect that plaintiff performed well … fail to raise an issue of fact as to pretext, since the co-workers and subordinates were not in a position to evaluate plaintiff's job performance, and they lack the personal knowledge necessary to testify as to her work ability." *Weit v. Flaum,* 258 A.D.2d 286, 287 (1st Dep't 1999) (summary judgment affirmed); *see King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir. 2003) (same); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124-25 (7th Cir, 1994) (same); *Griffin v. TNT Internat'l Express,* 2008 WL 697680, at *12 (S.D.N.Y. Mar. 12, 2008) (Castel, J.) (same).

This summary judgment principle negates the following opinions of Mui, Li and Merckx to the extent that they disagree with Kohn and Leitzinger's decision, and the criticisms of Plaintiff's performance from three VPs and several others upon which they relied:

- Mui, who admits to being Plaintiff's close friend, testified that Plaintiff was "a really good senior project manager and … she performed very well and that's my opinion." But Mui conceded that she worked with Plaintiff only during a brief transition period on EFM, was never her supervisor, and had no other first-hand knowledge about how well Plaintiff performed on any other project. (Mui Dep. 98, 101-02, 159, 167-71, 176-77, 179-82)

- Li, a VP, testified that he was a business sponsor on EFM and he gave Plaintiff an A+ on the project. But he also testified that he did not fill out the questionnaire that Kohn asked him to complete regarding Plaintiff's performance because he did not have sufficient knowledge about numerous aspects of her performance to provide answers. He also could not recall working with Plaintiff on any other projects. (Li Dep. 16-17, 26-28)

18

- Andrew Merckx, a Business Analyst, testified that he thought that Plaintiff did a good job on the EFM project, although she should improve her listening skills. He acknowledged that he observed VPs Smith and Chibnik's frustrations with her on the project, and he knew that Chibnik asked for her removal. Merckx also could not recall working with her on any other projects. (Merckx Dep. 18, 25-27, 39-41)[10]

Thus, Mui, Li and Merckx lacked the personal knowledge to testify about Plaintiff's overall performance. They did not even work with her on the EOAI project. Under *Weit, King, Anderson* and *Griffin*, their limited opinion testimony is insufficient to establish pretext.

Second, Plaintiff admits that she does not allege that Leitzinger, Pullman, Stein, Apel, Smith, Chibnik, Venezia or Nguyen discriminated against her and has no reason to believe that they did not provide their honest views to Kohn. (Tu Dep. 51, 60-66, 145-47, 155-56 188-89, 203-09, 213) Discrimination did not occur because Kohn chose to rely on these more numerous critical views, three of which came from VPs.

Third, Plaintiff concedes that she hesitated to lead the decision making on EOAI and did not demonstrate strong SPM skills on the project. She also admits that she agrees with the unfavorable comments on her 360 Leadership Assessment about her communication, leadership and decision-making skills. (Tu Dep. 120, 125, 178-87)

Fourth, to the extent, if any, that Plaintiff alleges that Patel should have been included in the RIF, as opposed to her, his performance appraisals and the 2008 written assessments completed by his project team members were better than the appraisals and assessments that she received. (Kohn Aff. ¶ 40 and Exs. Q-S)

---

[10] Plaintiff may allege that Kohn sought to force Merckx to lower the ratings that he gave to her on his assessment. (*See* Kohn Aff. Ex. O) Merckx denied that; he testified that Kohn did not tell him to lower the scores and he did not sense that Kohn wanted the scores to be less favorable. (Merckx Dep. 18, 35-36)

FIRM:15896934v1

Fifth, putting performance issues aside, Plaintiff has not come forward with any evidence that points to her gender or national origin as the reason for her inclusion in the RIF. At the time of the RIF, Kohn's team consisted of four women and three men. By national origin, it was a veritable United Nations. Kohn hired two women, Fischer and Givati, and promoted Mui and Pullman, which hardly is evidence of sex or national origin discrimination. (Kohn Aff. ¶¶ 8, 42) Moreover, Plaintiff admits that she is unaware of any facts that show that Kohn dislikes women or Asians. She alleges only that Kohn discriminated against her and no one else. And her only "direct evidence" of national origin discrimination is that Kohn often said that she was "too nice" and a stereotype allegedly exists that people from Taiwan are too nice and submissive. (Tu Dep. 45-46, 48, 50-51, 68-69, 288-89) Finally, Kohn is indebted to China for sheltering his father and family for years after they escaped religious persecution in Germany. (Kohn Aff. ¶ 43)

In sum, Plaintiff is unable to come forward with any evidence of pretext. Her sex and national origin discrimination claims concerning her initial salary, her training, and her discharge are empty. Summary judgment should be awarded on these claims.

## POINT II

### SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S RETALIATION CLAIMS BECAUSE SHE CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION OR SHOW THAT DEFENDANTS' STATED REASON FOR HER TERMINATION IS PRETEXTUAL.

Plaintiff alleges that she was discharged because she had previously complained that Kohn was discriminating against her. (*See* Complaint, First, Second and Third Claims) Like discrimination claims, retaliation claims are evaluated under a three-step burden-shifting analysis. *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010). Plaintiff initially must establish a *prima facie* case by demonstrating: (1) participation in a protected activity, (2) Defendants were aware of the protected activity, (3) she was subjected to an adverse employment action, and (4) a

20

causal connection exists between the protected activity and the adverse employment action. *Id.*

If Plaintiff satisfies this burden, Defendants must "articulate a legitimate, non-retaliatory reason

for the adverse employment action." *Id.* Upon Defendants doing so, Plaintiff can prevail only if

she can show that Defendants' reason is pretextual and that "retaliation was a substantial reason

for the adverse employment action." *Id.*

Plaintiff's retaliation claim should be dismissed because she can neither establish a *prima*

*facie* case nor show that Defendants' reason for her inclusion in the RIF was a pretext for

retaliation. According to Plaintiff, she complained about Kohn four times. The alleged facts,

applicable law, and futile nature of each complaint to establish retaliation are addressed in turn.

**A.     Plaintiff's Alleged July 2007 Oral Complaint to Pullman**

In July 2007, without raising her gender and national origin as issues, Plaintiff allegedly

told Pullman that it was "illegal discrimination" for Kohn to deny her technical training and to

treat her badly. Plaintiff allegedly wanted to take the NYU four-course program at the time, and

Kohn allegedly said no. (Tu Dep. 90-92, 286-87) Notably, the NYU course information is dated

03/04/08, seven months after this complaint allegedly occurred. Assuming, *arguendo*, Plaintiff

complained to Pullman, her discharge was not retaliation as a matter of law.[11]

To satisfy the fourth prong of the *prima facie* test, the adverse action must "closely

follow" the protected activity. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 274 (2001);

*Olsson v. Vertis Communications*, 2010 WL 5422514, at *3 (S.D.N.Y. Dec. 23, 2010 (four

months too long); *Avillan v. Potter,* 2006 WL 3103309, at *18 (S.D.N.Y. Nov. 1, 2006) (Castel,

J.) (five months too long). Here, Plaintiff's employment was terminated in the RIF 18 months

after her alleged complaint to Pullman, a period far too long to establish a causal connection.

---

[11]   Pullman attests that Plaintiff did not complain about discrimination by Kohn; training decisions were
made jointly by Kohn and her in 2007; and Plaintiff never asked her about the NYU program. (Pullman
Aff. ¶¶ 11, 12, 22) Kohn also attests that he had no knowledge of any such complaint. (Kohn Aff.¶ 44)

But even if Plaintiff could establish a *prima facie* case, to overcome summary judgment, she must "put forth evidence of pretext sufficient to permit a rational finder of fact to infer that her termination was more likely than not based on retaliation for her complaints." *Rosinski v. American Axle & Mfg., Inc.,* 2010 WL 3402984, at *2 (2d Cir. Aug. 31, 2010). Given that in 2008, VP Stein and Apel asked Kohn to remove her from EOAI, VPs Smith and Chibnik asked Kohn to remove her from EFM, and other colleagues criticized her work on EFM, Plaintiff has failed to put forth evidence of pretext sufficient for a jury to infer that she was let go in the January 2009 RIF because she complained to Pullman in July 2007.

**B.     Plaintiff's August 2008 Oral Complaint to Calandrella**

In August 2008, Plaintiff told HR Manager Calandrella during a 360 Leadership Assessment meeting that Kohn was treating her differently and that she was frustrated by his performance ratings. Plaintiff admits that she did not raise her gender and national origin as issues, and does not remember saying anything about discrimination. She further admits that Calandrella told her that she was not responsible for persons on Kohn's team, and that she should speak to HR Manager Schneider, who was responsible, if she desired. Plaintiff did not speak to Schneider at that time. Calandrella did not tell anyone, besides Schneider, about the conversation. Neither Kohn nor Leitzinger was aware of it. (Tu Dep. 307-14; Calandrella Aff. ¶¶ 2-5, 9-10; Kohn Aff. ¶ 44; Leitzinger Aff. ¶ 10)

Based on these facts, Plaintiff cannot establish a *prima facie* case of retaliation. First, Plaintiff did not engage in "protected activity" by telling Calandrella that she was being treated differently and was frustrated. To engage in protected activity, "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Sharpe v. MCI Communications Services, Inc.,* 684 F. Supp.2d 394, 406 (S.D.N.Y. 2010) (quoting

22

*Aspilaire v. Wyeth Pharms., Inc.,* 612 F. Supp.2d 288, 308-09) (S.D.N.Y. 2009); *see Griffin,* 2008 WL 697680, at *13 (same).

Second, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery,* 248 F.3d at 95. *See Bernard v. JP Morgan Chase Bank,* 2011 WL 326513, at *4 (2d Cir. Feb. 3, 2011) (same); *McPhatter v. New York City,* 378 Fed. Appx. 70, 2010 WL 2025758, at *1 (2d Cir. May 24, 2010) (same); *Avillan,* 2006 WL 3103309, at *18 (same).  Here, prior to speaking to Calandrella, Plaintiff had already been removed from the EAOI project based on Stein and Apel's complaints, and Smith had already voiced his displeasure with her on the EFM project. (Kohn Aff. ¶¶ 18-23 and Exs. C-G)

Moreover, even if Plaintiff could establish a *prima facie* case, in light of the numerous complaints about her performance, she lacks sufficient evidence from which a jury could infer that Defendants' reason for her discharge - inadequate performance - is a pretext for retaliation.

**C.    Plaintiff's October 31, 2008 Oral Complaint to Schneider**

On October 31, 2008, *the day after the RIF announcement,* Plaintiff asked to meet with Schneider.  When they eventually met on November 5, she told him that Kohn had criticized her work and removed her from a project.  She called Kohn's conduct "illegal discrimination," but did not mention her gender or national origin.  Schneider did not tell Kohn or Leitzinger of the complaint until after Leitzinger submitted her RIF list. (Tu Dep. 315-18; Schneider Aff. ¶ 8)

Once again, the Second Circuit's decision in *Slattery,* 248 F.3d at 95, is fatal to Plaintiff's retaliation claim.  By the time of her complaint, Kohn had already told her that she was in danger of losing her job. (Tu Dep. 158, 202-03)  She also had been removed from two projects, seven persons had criticized her 2008 performance (Stein, Apel, Smith, Chibnik, Venezia, Nguyen and Slack), and she had received a deficient mid-year appraisal. (Kohn Aff. ¶¶ 18-33 and Exs. C-N)

23

In *Bernard,* 2011 WL 326513, at *4, the Second Circuit recently held that the plaintiff could not establish a *prima facie* case of retaliation because she had received a verbal warning four months, and a written warning two months, before she complained about discrimination. Similarly, in *McPhatter,* 2010 WL 2025758, at *1, the Second Circuit affirmed the district court's summary judgment decision because "plaintiff was subject to escalating disciplinary actions … well before she engaged in any protected activity." Here, prior to her October 31 complaint, Kohn had told her that she was in danger of being discharged. (Tu Dep. 158, 202-03) Thus, Plaintiff cannot establish a *prima facie* case of retaliation.[12]

In any case, even if Plaintiff could establish a *prima facie* case, in light of previously: (1) being advised that she was in danger of losing of her job, (2) being removed from two projects, and (3) having seven people criticize her work, she lacks sufficient evidence from which a jury could infer that Defendants' reason for her discharge - inadequate performance - is pretextual.

**D.    Plaintiff's Written December 9, 2008 Complaint to Schneider**

On December 9, 2008, Plaintiff complained to Schneider, specifically alleging, for the first time, gender, race, national origin and religious discrimination, and retaliation. (Schneider Aff. ¶ 11 and Ex. F)   HR had received Leitzinger's RIF list a month earlier.   (*Id.* ¶ 8) Application of the Second Circuit law in *Slattery, Bernard* and *McPhatter* shows that Plaintiff cannot establish a *prima facie* case because prior to this complaint, she had: (1) been placed on the RIF list, (2) told she was in danger of losing her job, (3) removed from two projects, (4) been criticized by numerous colleagues, and (5) received a deficient mid-year appraisal. (Kohn Aff. ¶¶ 18-40 and Exs. C-N) Thus, an inference of retaliation does not arise.

---

[12]  Plaintiff also cannot establish a *prima facie* case because she did not tell Schneider that she was being unfairly treated due to her membership in a protected class. *See Sharpe,* 684 F. Supp.2d at 406.

In any case, even if Plaintiff could establish a *prima facie* case, she cannot show pretext because the decision to terminate her in the RIF had been made before her December 9 complaint. *See Weiss v. Morgan Stanley Investment Mgmt.*, 345 Fed. Appx. 713, 2009 WL 2958703, at *2 (2d Cir. Sept. 16, 2009) (pretext cannot be proven where plaintiff complained after the decision was made to include her in a large-scale RIF).

In sum, Plaintiff cannot rely on any of her four complaints to establish a *prima facie* case or to show that Defendants' reason for her discharge in the RIF – inadequate performance – is a pretext for retaliation. Plaintiff's retaliatory discharge claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully submit that the Complaint should be dismissed in its entirety with prejudice and that they should be granted summary judgment as a matter of law, together with costs, disbursements and reasonable attorneys' fees.

Dated:  May 24, 2011

EPSTEIN BECKER & GREEN, P.C.

By: _____
Barry Asen
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
Attorneys for Defendants

MELISSA MAZER, ESQ.

Vice President and Senior Counsel
OppenheimerFunds, Inc.
Two World Financial Center
New York, New York  10281
(212) 323-0247
Co-Counsel for Defendants

25