UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MAYLING TU,

                Plaintiff,

                                             10 Civ. 4971 (PKC)

      v.

OPPENHEIMERFUNDS, INC.
and DANIEL KOHN,

                Defendants.
-----------------------------------------------------------------x


## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


Of Counsel:                                                          OFI Senior Counsel:

    Barry Asen                                                     Melissa Mazer

FIRM:16209445v1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

POINT I

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S DISCRIMINATORY TERMINATION CLAIMS BECAUSE
SHE CANNOT ESTABLISH THAT DEFENDANTS' STATED REASON
FOR HER TERMINATION IS PRETEXTUAL.................................................................. 2

POINT II

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S RETALIATORY TERMINATION CLAIM BECAUSE
SHE CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION
OR SHOW THAT DEFENDANTS' STATED REASON FOR HER
TERMINATION IS PRETEXTUAL ................................................................................... 7

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

*AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc.*,
   2007 WL 4302514 (S.D.N.Y. Dec. 7, 2007) ..................................................................7

*Bernard v. JP Morgan Chase Bank NA*, 2011 WL 326513 (2d Cir. Feb. 3, 2011) ................4, 7, 8

*Di Giovanna v. Beth Israel Medical Center*, 651 F. Supp.2d 193 (S.D.N.Y. 2009) ......................6

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) ..........................................................................1, 8, 9

*Isaac v. City of New York*, 701 F. Supp.2d 477 (S.D.N.Y. 2010) ........................................1, 3, 8, 9

*Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) ...............................................................1

*Lessey v. Broadway Electric*, 2009 WL 3755471 (S.D.N.Y. Nov. 2, 2009) ...............................1, 7

*McPhatter v. New York City*,
   378 Fed. Appx. 70, 2010 WL 2025758 (2d Cir. May 24, 2010) ..................................8

*Ochei v. All Care/Onward Healthcare*, 2009 WL 890061 (S.D.N.Y. Mar. 31, 2009) ...................3

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ................................................7

*Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir. 2001) ................................8, 9

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) .............................................................3, 7

*U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*,
   2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006) ..............................................................7

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000) ............................................................7

## PRELIMINARY STATEMENT

This action initially involved Plaintiff's following claims against OppenheimerFunds, Inc. ("OFI") and Daniel Kohn: (1) she was paid less than two male Senior Project Managers ("SPMs") because of her sex and Taiwanese national origin, (2) she was denied technical training because of her sex and national origin, and (3) she was terminated in OFI's reduction-in-force ("RIF") because of her sex, national origin and her prior complaints about Kohn. In her Memorandum of Law in Opposition to Summary Judgment ("Opp. Mem."), however, Plaintiff has withdrawn her first two claims, stating that "[t]o narrow the issues for the Court, Plaintiff only seeks relief on the claims arising from her termination ...." (Opp. Mem. at 17 n.88) Accordingly, without further discussion, judgment for Defendants should be granted on Plaintiff's discriminatory pay and training claims.

Although Plaintiff still opposes summary judgment on her discriminatory and retaliatory termination claims, her challenge is belied by Second Circuit precedent and Your Honor's prior decisions. To overcome summary judgment on a discrimination claim, a plaintiff "must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009); *Lessey v. Broadway Electric,* 2009 WL 3755471, at *6 (S.D.N.Y. Nov. 2, 2009) (Castel, J.) (quoting *Leibowitz* and granting summary judgment to defendants). To overcome summary judgment on a retaliation claim, a plaintiff "must show that retaliation was a substantial reason for the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Isaac v. City of New York*, 701 F. Supp.2d 477, 494 (S.D.N.Y. 2010) (Castel, J.) (quoting *Hicks* and granting summary judgment to defendants).

*Here, Plaintiff has failed to come forward with any evidence of discrimination or retaliation.* Instead, relying on speculation, conclusory allegations, and by mischaracterizing

1

certain evidence, Plaintiff seeks to overcome summary judgment by contending *only* that there are material issues of fact concerning whether Defendants' stated reason for her inclusion in the RIF – poor job performance – is false and a pretext for discrimination and retaliation. But even if Plaintiff could raise a material issue concerning whether she performed poorly – and she has not done so – no rational jury, based on the absence of record evidence concerning discrimination and retaliation, could conclude that her employment was terminated for discriminatory or retaliatory reasons. Thus, as next shown in Points I and II of this Reply Memorandum of Law, summary judgment should be granted to Defendants in the entirety.

## POINT I

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATORY TERMINATION CLAIMS BECAUSE SHE CANNOT ESTABLISH THAT DEFENDANTS' STATED REASON FOR HER TERMINATION IS PRETEXTUAL.**

Plaintiff was included in the January 2009 RIF because of her well-documented poor performance in 2008. Vice President ("VPs") Brett Stein, Enrique Smith and Ron Chibnik each criticized her performance on their projects, as did project team members Nick Apel, Lauren Venezia, Andrew Slack and Nguyen Linh. (*See* Defs.' Main Memorandum of Law at 17 and the affidavits and exhibits cited therein; *see also* Plaintiff's Rule 56.1 Statement at ¶¶ 38, 39, 64, 67, 85, 98, 99, 101) Plaintiff does not contend that these seven persons discriminated against her or were giving less than honest opinions about her performance. (*Id.* at ¶¶ 44, 70, 89, 104, 105; Tu Dep. at 68) Plaintiff admits that VPs Smith and Chibnik asked Kohn to remove her as the SPM of the Enterprise Fund Master ("EFM") project, and that Kohn replaced her on the project with Linda Tan Mui, a woman whose father was born in Taiwan and mother in China. (Plaintiff's Rule 56.1 Statement at ¶¶ 87, 90, 91) Plaintiff also concedes that notwithstanding Mui's same

gender and national origin, Kohn promoted Mui, and notwithstanding their gender, he promoted Jodi Pullman twice and hired Allyson Fischer and Roni Gavati. (*Id.* at ¶¶ 25-27, 90)

Similarly, Plaintiff admits that she never heard anyone make a discriminatory remark about her, and that she is unaware of any facts showing that Kohn dislikes women or Asians. (Plaintiff's Rule 56.1 Statement at ¶ 137; Tu Dep. at 44-48, 288-89) Moreover, she admits that she thought that Kohn might have discriminated against her because a stereotype exists that Taiwanese people are "submissive," and Kohn told her that she was "too nice" and once said she was "meek" or "timid." (Plaintiff's Rule 56.1 Statement at ¶¶ 138-139) Such "subjective impressions" of discrimination are insufficient to defeat summary judgment. *Ochei v. All Care/Onward Healthcare*, 2009 WL 890061, at *12 (S.D.N.Y. Mar. 31, 2009) (Castel, J.).

As to the RIF itself, Plaintiff admits that Kohn's supervisor, Senior VP Laura Leitzinger, made the final RIF termination decision, and that Leitzinger did not discriminate against her. (Plaintiff's Rule 56.1 Statement at ¶¶ 120, 125, 136) And she admits that besides herself, four men and two women were let go in the RIF; no one else with an Asian background was included; and that Mui (Taiwanese/Chinese) and Ketan Patel (Indian) remain employed. (*Id.* at ¶¶ 124)

Plaintiff's numerous admissions impel the conclusion that a rational factfinder could not find that discrimination was the reason for her inclusion in the RIF. For this inescapable conclusion alone, Plaintiff's discriminatory termination claim should be dismissed because a "reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Isaac*, 701 F. Supp.2d at 488 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original). Plaintiff has not shown and cannot show that "discrimination was the real reason" for her inclusion in the RIF.

3

Undaunted by her admissions and the relevant case law, and apparently hoping that this Court will disregard the dearth of discrimination and retaliation evidence, Plaintiff challenges the veracity of certain aspects of the affidavits and the exhibits that support Defendants' motion and attest to her poor 2008 performance. First, she asserts that there is no contemporaneous document that confirms that Leitzinger directed Kohn to recommend one member from his team for inclusion in the RIF based on their performance. (Opp. Mem. at 20) But both Leitzinger and Kohn attest to her verbal directive to do so. (Leitzinger Aff. at ¶ 7; Kohn Aff. at ¶ 39) Plaintiff merely speculates that Leitzinger might not have given Kohn that instruction. "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Bernard v. JP Morgan Chase Bank NA*, 2011 WL 326513, at *1 (2d Cir. Feb. 3, 2011).

Second, Plaintiff argues that Pullman gave her a strong 2006 appraisal and a basically favorable 2007 appraisal, but Kohn rated her poorly "[j]ust a few months later" in a 2008 mid-year appraisal, from which a jury could conclude that Kohn was biased. (Opp. Mem. at 8, 21) But Plaintiff admits that she agreed with Pullman's criticisms in the 2006 appraisal that she should be more assertive and seemed indecisive at times. (Plaintiff's Rule 56.1 Statement at ¶¶ 32, 33) She also admits that Pullman criticized her in the 2007 appraisal, stating, *inter alia*, that "project teams often feel that she is not leading them as effectively as is expected." (*Id.* at ¶¶ 39-42) As to her 2008 mid-year appraisal, the "just a few months later" was actually nine months later on September 18, 2008. (Kohn Aff. at Ex. I at 6) In that interim, Plaintiff had been removed from the Enhanced Online Account Information ("EOAI") project at the request of VP Stein and Apel, and VP Smith had voiced his concerns to Kohn about her performance on the EFM project. Indeed, just a month after her mid-year appraisal, Plaintiff was removed from the EFM project at the request of VPs Smith and Chibnik. (*See* Defs.' Main Mem. at 7-10, 17)

4

Third, Plaintiff contends that she was not removed from the EOAI project because of her performance, but that Kohn blamed the EOAI team members in his March 13, 2008 e-mail to VP Stein for "failing to work with Ms. Tu appropriately." (Opp. Mem. at 21-22) She quotes Kohn's e-mail at length, but glosses over his third sentence: "You have indicated previously that Nick Apel and Tom Closs have been continuing to act in a PM [Project Manager] role on the EOAI project as they have done on their previous efforts." (*Id.* at 12) Apel and Closs assumed Plaintiff's project management duties because, as Apel wrote to Pullman, she was not providing strong leadership and, as Apel wrote to Kohn, she was not leading the project, lacked effective decision-making and communication skills, was counter-productive, and the EOAI team members were frustrated with her. (Apel Aff. at ¶¶ 3-4, 6-7 and Exs. A, B)   In any event, even if there were some doubt as to the reason for Plaintiff's removal from the project, there can be no doubt that Stein and Apel were dissatisfied with her performance. (*Id.* at ¶¶ 2-8 and Exs. A, B; Stein Aff. ¶¶ 2-5)   Moreover, Plaintiff admits that she has no factual basis upon which to allege that their views were not honestly held or that they acted in a discriminatory manner towards her. (Plaintiff's Rule 56.1 Statement at ¶¶ at 63-64; Tu Dep. at 145-47)

Fourth, Plaintiff asserts that Kohn and Pullman's version of her removal from the Concur project is false. (Opp. Mem. at 22)   While Defendants strongly disagree, the issue is a strawman. Defendants have not contended that Plaintiff's inadequate performance on the Concur project was a reason for her inclusion in the RIF. (*See, e.g.,* Defs.' Main Mem. at 16-17)

Fifth, Plaintiff speculates that "it appears that Oppenheimer employees evaluated Ms. Tu more negatively when Mr. Kohn solicited their opinion than when others did." (Opp. Mem. at 22)   To support this conclusory assertion, Plaintiff proffers that Kohn's explanation that "Apel was afraid to provide a candid account of Ms. Tu's performance to Ms. Pullman because of the way Ms. Tu would react" is not credible. (*Id.*)   But Apel's e-mail to Pullman and his later e-mail

FIRM:16209445v1

to Kohn were both negative and critical of Plaintiff's performance. (Apel Aff. at Exs. A, B) In addition, Apel's affidavit confirms Kohn's testimony: "[I]t was exceedingly difficult for me to address my concerns directly with Mayling. I found her to be argumentative and defensive. Discussions that should have taken two minutes took 20. Five-minute discussions could last an hour. Even more importantly, by the end of those conversations, nothing was accomplished because Mayling rejected almost everything I said." (Apel Aff. at ¶ 4)

Sixth, Plaintiff misstates that Kohn influenced two members of the EFM project, Andrew Slack and Andrew Merckx, to revise their written assessments of her performance downward. (Opp. Mem. at 13-14, 22-23) While Slack prepared a revised assessment, no evidence exists that he did so at Kohn's urging. Slack was not deposed, and Plaintiff merely relies on the fact that he revised his initial assessment to speculate that Kohn asked him to do so. (*Id.*) Moreover, Merckx was deposed, and Merckx testified that Kohn did *not* ask him to revise his assessment downward and he felt *no* pressure to do so. (Merckx Dep. at 18, 35-36)[1]

Finally, Plaintiff speculates that Kohn treated Ketan Patel more favorably than he treated her. (Opp. Mem. at 23) She cannot seriously dispute, though, that Patel was rated "Meets Company Standards" on his 2007 and 2008 year-end appraisals, and that the written assessments that he received from persons on his project teams were better across-the-board than the assessments that she received. (Kohn Aff. ¶ 41 and Exs. Q-S) Rather than admit these facts in paragraph 140 of her Rule 56.1 Statement, Plaintiff "[o]bjects insofar as this statement is not a statement of facts but a characterization." A "tactic where the nonmovant 'dispute[s] the factual assertions in the [moving party's] corresponding paragraphs with objections alone' and fails to

---

[1] Contrary to Merckx's testimony, Plaintiff states that Mui testified that Merckx told her that Kohn pressured him to rate Plaintiff less favorably. (Opp. Mem. at 14) Her testimony is inadmissible hearsay, which cannot be used for opposing summary judgment. *See, e.g., Di Giovanna v. Beth Israel Medical Center*, 651 F. Supp.2d 193, 202 (S.D.N.Y. 2009).

cite evidence 'directly violates' Rule 56.1" *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc.*, 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (quoting *U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*, 2006 WL 2136249, at *4 (S.D.N.Y. Aug. 1, 2006)).[2]

In light of this factual background, the Second Circuit's recent teaching in *Bernard*, 2011 WL 326513 at *2, is particularly apt. For summary judgment purposes: "the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. [*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)]. [I]t is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." [*St. Mary's Honor Center v. Hicks*, 509 U.S. at 519]." Thus, it is Plaintiff's burden here "to prove that the nondiscriminatory basis for the adverse action [her termination] is mere pretext, and the defendant's true intent was discriminatory." *Lessey*, 2009 WL 3755471, at *6 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). Plaintiff has not satisfied her burden; she has not shown pretext or discriminatory intent. Accordingly, Defendants should be awarded judgment on Plaintiff's discriminatory termination claims.

### POINT II

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATORY TERMINATION CLAIM BECAUSE SHE CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION OR SHOW THAT DEFENDANTS' STATED REASON FOR HER TERMINATION IS PRETEXTUAL.**

For Plaintiff to establish a *prima facie* case of retaliation, she must show that: (1) she engaged in a protected activity; (2) Defendants were aware of her protected activity; (3) her employment was terminated; and (4) a causal connection existed between her protected activity

---

[2] Without citing any record evidence, Plaintiff also improperly objects in Paragraphs 35, 37, 46, 75, 102, 108, and 135 of her Rule 56.1 Statement.

and her termination. *See Hicks v. Baines*, 593 F.3d at 164. Plaintiff contends that she has established a *prima facie* case because she complained to Patrick Schneider about Kohn in October and November 2008 (which was a protected activity), and then Defendants terminated her employment in the RIF. (Opp. Mem. at 18-24)[3] Even if Plaintiff could establish a *prima facie* case, she can prevail on this motion only if she also comes forward with facts to show that Defendants' stated reason for her termination in the RIF – poor performance – is pretextual and that "retaliation was a substantial reason for the adverse action." *See Hicks v. Baines*, 593 F.3d at 164; *Isaac*, 701 F. Supp.2d at 494. The record evidence, however, does not support a *prima facie* case or that retaliation was a substantial reason for her inclusion in the RIF.

Plaintiff cannot establish a *prima facie* case of retaliation because an inference of retaliation will not arise where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *Bernard*, 2011 WL 326513, at *4 (same); *McPhatter v. New York City*, 378 Fed. Appx. 70, 2010 WL 2025758, at *1 (2d Cir. May 24, 2010) (same). It is undisputed that the following gradual adverse job actions and abundant criticisms began well before Plaintiff complained to Schneider about Kohn in October and November 2008: (1) Stein, Apel, Smith, Chibnik, Venezia, Slack and Nguyen had criticized her performance; (2) she had been removed from the EOAI and EFM projects; (3) she had received a deficient mid-year appraisal; and (4) Kohn had told her that she was in danger of losing her job  (Plaintiff's Rule 56.1 Statement ¶¶ 38, 39, 64, 67, 84-88, 92-94, 98-101; Kohn Aff. ¶¶ 18-35 and Exs. C-N; Stein Aff. ¶¶ 3-4; Apel Aff. ¶¶ 4-8)

---

[3] Plaintiff has narrowed the scope of her alleged protected activities, stating: "Again, in an effort to streamline the issues for the Court, Plaintiff relies on her complaints to Patrick Schneider in October and November 2008 as the protected activity that resulted in her termination." (Opp. Mem. at 18)

8

In response, Plaintiff initially argues that *Slattery* does not apply to her because she "does not claim temporal proximity as the only basis of causation," but also claims that Leitzinger and Kohn knew about her complaint prior to their RIF decision. (Opp. Mem. at 19) But even if Leitzinger and Kohn arguably knew about her complaint – and they deny it – it means only that Plaintiff has satisfied the second element of her *prima facie* case – "the defendant knew of the protected activity." *Hicks v. Baines*, 593 F.3d at 164. It does not mean that she has established the requisite four elements of a *prima facie* case. In fact, in *Slattery*, although it was undisputed that the employer was aware of the Slattery's complaint before his termination, summary judgment was granted because the employer reduced his duties for performance-related reasons before he complained, negating any inference of retaliatory causation. *Slattery*, 248 F.3d at 95.[4]

Plaintiff also attempts to distinguish *Slattery* by asserting that Kohn testified that she would not have been terminated in January 2009 if there had not been a RIF. (Opp. Mem. at 19) But *Slattery*'s precedent cannot be distinguished by the fact that Plaintiff would have been placed on a performance improvement plan and given an opportunity to improve if the RIF had not occurred. (*See* Kohn Aff. ¶ 37) As the plaintiff in *Slattery*, Plaintiff's employment here was terminated based upon the adverse actions and criticisms before she complained.

Likewise, Plaintiff cannot withstand summary judgment by simply claiming that Defendants' stated reason for her termination is pretextual because she has not raised material factual issues from which a rational factfinder could conclude that "retaliation was a substantial reason for the adverse action." *See Hicks v. Baines*, 593 F.3d at 164; *Isaac*, 701 F. Supp.2d at 494. As discussed above, prior to her complaint, she already had been criticized by numerous people, removed from two projects, given a deficient mid-year performance appraisal, and

---

[4] While immaterial to the result of this motion, Leitzinger and Kohn deny that they knew about Plaintiff's complaint to Schneider before the RIF decision, and Schneider denies that he told them. (Leitzinger Aff. at ¶ 10; Kohn Aff. at ¶ 44; Schneider Aff. at ¶ 8)

advised that she was in danger of losing her job. (Plaintiff's Rule 56.1 Statement at ¶¶ 84-88, 92-94, 98-101; Kohn Aff. ¶¶ 18-33 and Exs. C-N) These facts and admissions negate any possible inference that retaliation was a substantial reason for her termination.

Last, it is undisputed that Leitzinger made the final decision to terminate Plaintiff's employment in the RIF. (Plaintiff's Rule 56.1 Statement at ¶¶ 120, 125) Plaintiff's admission that Leitzinger did not retaliate against her (*id.* at ¶ 136) compels the result that Defendants are entitled to judgment on her retaliation claim as a matter of law.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully submit that the Complaint should be dismissed in its entirety with prejudice and that they should be granted summary judgment as a matter of law, together with costs, disbursements and reasonable attorneys' fees.

Dated: June 30, 2011

| | |
|---|---|
| EPSTEIN BECKER & GREEN, P.C.<br><br>By: *[signature]*<br>Barry Asen<br>250 Park Avenue<br>New York, New York 10177-1211<br>(212) 351-4500<br>Attorneys for Defendants | MELISSA MAZER, ESQ.<br><br>Vice President and Senior Counsel<br>OppenheimerFunds, Inc.<br>Two World Financial Center<br>New York, New York 10281<br>(212) 323-0247<br>Co-Counsel for Defendants |

10