UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MAYLING TU,

                            Plaintiff,                       10 Civ. 4971 (PKC)

         -against-

                                          MEMORANDUM
                                          AND ORDER

OPPENHEIMERFUNDS, INC. and DANIEL
KOHN,

                           Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

            Plaintiff Mayling Tu, who is a female of Taiwanese-American descent, asserts

that defendants OppenheimerFunds, Inc. ("Oppenheimer") and Daniel Kohn, her former

supervisor, terminated her for retaliatory and discriminatory reasons.  She asserts claims of

retaliation and discrimination on the basis of race, sex and national origin pursuant to 42 U.S.C.

§ 2000e ("Title VII") and 42 U.S.C. § 1981 against Oppenheimer, as well as claims against both

Oppenheimer and Kohn under the New York City Human Rights Law, New York City

Administrative Code § 8-107 (the "NYCHRL").  Discovery in this case is closed, and the

defendants have moved for summary judgment.

            For the reasons explained, the defendants' motion is granted.

BACKGROUND

            The following facts are either undisputed or described in the light most favorable

to plaintiff as the non-movant.  See, e.g., Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir.

2011).

A.  <u>Plaintiff's Hiring and Initial Performance Reviews.</u>

In April 2006, Oppenheimer offered plaintiff the position of Senior Project Manager at a salary of $125,000 per year.  (Def. 56.1 ¶¶ 9-11; Pl. 56.1 Resp. ¶¶ 9-11.)  In December 2006, plaintiff received her year-end review by non-party Jodi Pullman, plaintiff's then-supervisor.  (Def. 56.1 ¶¶ 9, 30; Pl. 56.1 Resp. ¶¶ 9, 30.)  On a scale of one to five, with one being the most positive score and five being the most negative, Pullman rated plaintiff as a three, which denoted that she met company standards.  (Def. 56.1 ¶ 31; Pl. 56.1 Resp. ¶ 31.)  Pullman stated at the time that plaintiff "could learn to be more assertive in her communications – at times she seems indecisive or perhaps too willing to manage by consensus."  (Def. 56.1 ¶ 32; Pl. 56.1 Resp. ¶ 32.)  At her deposition, the plaintiff agreed that this was "an accurate assessment" of her work.  (Def. 56.1 ¶ 33; Pl. 56.1 Resp. ¶ 33; Tu Dep. at 82.)

In the year-end review of December 2007, Pullman again rated plaintiff a three.  (Def. 56.1 ¶ 34; Pl. 56.1 Resp. ¶ 34.)  The rating incorporated coworker feedback that was somewhat critical of plaintiff's management and communications skills.  (Def. 56.1 ¶¶ 35-42; Pl. 56.1 Resp. ¶¶ 35-42.)  One colleague noted that plaintiff's communications should be more concise, and that she would benefit from leadership training.  (Def. 56.1 ¶ 38; Pl. 56.1 Resp. ¶ 38.)  Plaintiff does not contend that Pullman personally discriminated against her.  (Def. 56.1 ¶ 44; Pl. 56.1 Resp. ¶ 44.)

B.  <u>Plaintiff's Increasingly Negative Performance Reviews Under Kohn.</u>

Kohn became plaintiff's direct supervisor in February 2008.  (Kohn Dep. at 114.)  Subsequent reviews included harsher feedback on plaintiff's managerial skills.  In mid-February, 2008, Nick Apel, who worked with plaintiff on the Enhanced Online Account Information project (the "EOAI Project"), and defendant Daniel Kohn, who became plaintiff's direct

supervisor, discussed their concerns about plaintiff's decision-making and communications skills.  (Def. 56.1 ¶ 67; Pl. 56.1 Resp. ¶ 67.)  Apel stated that plaintiff struggled to understand the goals of the EOAI project, was ineffective at decision-making and communication, frustrated coworkers, and was "very counterproductive."  (Def. 56.1 ¶ 67; Pl. 56.1 Resp. ¶ 67.)  Plaintiff was removed from the EOAI Project in February 2008.[1]  (Def. 56.1 ¶¶ 68-69.)

Kohn then assigned plaintiff to a project known as the Enterprise Fund Master. (Def. 56.1 ¶ 84; Pl. 56.1 Resp. ¶ 84.)  On April 11 and April 16, 2008, Enrique Smith, an Oppenheimer vice president, told Kohn that plaintiff was failing to understand the project's business objectives.  (Def. 56.1 ¶ 85; Pl. 56.1 Resp. ¶ 85.)  Kohn communicated this view to plaintiff.  (Def. 56.1 ¶ 86; Pl. 56.1 Resp. ¶ 86.)  In October 2008, after receiving complaints about plaintiff's performance from a second vice president, who requested that plaintiff be removed from the project, Kohn removed the plaintiff.  (Def. 56.1 ¶¶ 87-88; Pl. 56.1 Resp. ¶ 87-88; Kohn Aff't Ex. G.)  Plaintiff's role was filled by a female of Taiwanese-American descent, and plaintiff does not assert that criticisms of her performance on the EOAI Project were racially motivated or based on anything other than good-faith opinions.  (Def. 56.1 ¶¶ 89-91; Pl. 56.1 Resp. ¶¶ 89-91.)

Kohn gave plaintiff a written mid-year review prior to her removal from the Enterprise Fund Master project.  (Def. 56.1 ¶ 92; Pl. 56.1 Resp. ¶ 92.)  The written appraisal contains an electronic signature by Kohn dated September 24 and one from plaintiff dated September 18.  (Kohn Aff't Ex. I.)  In it, Kohn stated that plaintiff "acted more as a project coordinator than a project manager," and that, as to the Enterprise Fund Master assignment,

---

[1] Plaintiff disputes certain details surrounding her removal from the project, but not the fact that she ultimately was removed.  (Pl. 56.1 Resp. ¶¶ 68-69.)

plaintiff "wasn't understanding" the project's goals. (Def. 56.1 ¶ 93; Pl. 56.1 Resp. ¶ 93.) Kohn informed plaintiff that she was in danger of losing her job. (Def. 56.1 ¶ 94; Pl. 56.1 Resp. ¶ 94.)

Separately, in August 2008, plaintiff was reviewed by her managers and peer-level co-workers; as part of this review, plaintiff also rated her own performance. (Def. 56.1 ¶¶ 71-73; Pl. 56.1 Resp. ¶¶ 71-73.) In certain categories, Kohn gave her higher marks than she gave herself, while the reverse also was true. (Def. 56.1 ¶ 74; Pl. 56.1 Resp. ¶ 74.) The differences between plaintiff's self-administered scores and those given by Kohn were slight. (Def. 56.1 ¶ 74; Pl. 56.1 Resp. ¶ 74.) Plaintiff met with a human resources manager to discuss her reviews. (Def. 56.1 ¶ 77; Pl. 56.1 Resp. ¶ 77.) Plaintiff was advised to speak further with human resources, but never did. (Def. 56.1 ¶¶ 82-83; Pl. 56.1 Resp. ¶¶ 82-83.)

In plaintiff's annual review, Kohn rated her as a four, which denoted "needs development" and was one level lower than her previous reviews of three. (Def. 56.1 ¶ 112; Pl. 56.1 Resp. ¶ 112.) Kohn specifically noted plaintiff's leadership weaknesses. (Def. 56.1 ¶ 113; Pl. 56.1 Resp. ¶ 113.) Typically, an employee with such a rating was placed on an employee improvement plan, and termination would not result unless the performance failed to improve. (Def. 56.1 ¶ 115; Pl. 56.1 Resp. ¶ 115.)

In anticipation of plaintiff's year-end review for 2008, on October 29, Kohn again solicited plaintiff's coworkers for input about her performance. (Def. 56.1 ¶¶ 95-96; Pl. 56.1 Resp. ¶¶ 95-96.) Five individuals responded, and their comments reflect a consensus that plaintiff needed improvement and/or did not meet expectations in several areas; one of the questionnaire's respondents was more positive in his critique. (Def. 56.1 ¶¶ 97-99, 101, 106; Pl. 56.1 Resp. ¶¶ 97-99, 101, 106.) Plaintiff does not assert that her coworkers' views were discriminatory. (Def. 56.1 ¶¶ 104-05; Pl. 56.1 Resp. ¶¶ 104-05.)

On October 30, 2008, Oppenheimer's CEO announced in an e-mail that there would be employee layoffs (or, as defendants characterize it, a "reduction in force") in the near future.  (Def. 56.1 ¶ 116; Pl. 56.1 Resp. ¶ 116.)  When instructed to recommend an employee for possible termination, Kohn named the plaintiff.  (Def. 56.1 ¶¶ 118-19.)  Plaintiff and six other project managers ultimately were recommended for termination.  (Def. 56.1 ¶¶ 120-22, 126; Pl. 56.1 Resp. ¶¶ 120-22, 126.)  Along with 250 other employees, her employment at Oppenheimer ended on January 30, 2009.  (Def. 56.1 ¶ 126; Pl. 56.1 Resp. ¶ 126; Schneider Aff't ¶ 5.)

C.   Plaintiff's Discussions about Kohn with Human Resources.

In late October 2008, plaintiff contacted HR and complained about Kohn.  (Def. 56.1 ¶ 127; Pl. 56.1 Resp. ¶ 127.)  The parties disagree as to whether this conversation preceded or followed the October 30 companywide announcement of future layoffs.  (Def. 56.1 ¶ 127; Pl. 56.1 Resp. ¶ 127.)  On November 5, she again spoke to HR, stating that Kohn constantly criticized her and unfairly removed her from a project.  (Def. 56.1 ¶ 128; Pl. 56.1 Resp. ¶ 128.)  Plaintiff called Kohn's conduct "illegal discrimination," but did not specify the nature of the alleged discrimination.  (Def. 56.1 ¶ 129; Pl. 56.1 Resp. ¶ 129.)  Approximately one month later, plaintiff complained in writing to HR, indicating that she had been discriminated against on the basis of gender, race, national origin and religion, and that she was experiencing retaliation.  (Def. 56.1 ¶ 132; Pl. 56.1 Resp. ¶ 132.)

D.   Plaintiff's Professional Training Opportunities.

As an ongoing training practice, Oppenheimer covered costs for its employees to attend in-house and outside educational courses, provided that the courses were relevant to the employee's professional development.  (Def. 56.1 ¶¶ 49-51; Pl. 56.1 Resp. ¶¶ 49-51.)  Oppenheimer covered plaintiff's expenses for leadership courses but denied reimbursement for

four technology courses, concluding that they were both costly and irrelevant to plaintiff's work

responsibilities. (Def. 56.1 ¶¶ 51-59; Pl. 56.1 Resp. ¶¶ 51-59.)

SUMMARY JUDGMENT STANDARD.

        Summary judgment "shall" be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Rule 56(a), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment

motion to come forward with evidence on each material element of his claim or defense,

sufficient to demonstrate that he or she is entitled to relief as a matter of law. Vt. Teddy Bear

Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In raising a triable issue of fact,

the non-movant carries only "a limited burden of production," but nevertheless "must

'demonstrate more than some metaphysical doubt as to the material facts,' and come forward

with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med.

Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067,

1072 (2d Cir. 1993)).

        A fact is material if it "might affect the outcome of the suit under the governing

law," meaning that "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must

view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor, and may grant summary judgment only when no reasonable trier of fact

could find in favor of the nonmoving party. Costello, 632 F.3d at 45; accord Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986). In reviewing a motion for

summary judgment, the court may scrutinize the record, and grant or deny summary judgment as

the record warrants.  Rule 56(c)(3).  In the absence of any disputed material fact, summary

judgment is appropriate.  Rule 56(a).

"A party opposing summary judgment does not show the existence of a genuine

issue of fact to be tried merely by making assertions that are conclusory or based on

speculation."  Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir.

2008) (internal citation omitted); see also Anderson, 477 U .S. at 249-50 (summary judgment

may be granted if the opposing evidence is "merely colorable" or "not significantly probative")

(citations omitted).  An opposing party's facts "must be material and of a substantial nature, not

fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor

merely suspicions."  Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d

Cir. 1981) (quotation marks omitted).

DISCUSSION

Plaintiff asserts that Oppenheimer violated Title VII and Section 1981 by

unlawfully discriminating and retaliating against her.  "Most of the core substantive standards

that apply to claims of discriminatory conduct in violation of Title VII are also applicable to

claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."

Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004).  To the extent that Title

VII and Section 1981 otherwise differ, those distinctions are not relevant here.

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973), the plaintiff first has the burden of proving by a preponderance of the

evidence a prima facie case of discrimination.  To establish a prima facie case, a plaintiff must

show (1) membership in a protected class, (2) qualification for the position, and (3) an adverse

employment action arising under circumstances that (4) raise an inference of discrimination.

Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009).  The plaintiff's burden in establishing a prima facie case is "de minimis."  Id.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its actions.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  Finally, the plaintiff must then prove by a preponderance of the evidence that the reasons proffered by the defendant were merely pretextual.  Id.

Plaintiff separately asserts that both Oppenheimer and Kohn discriminated and retaliated against her in violation of the NYCHRL.  "[C]laims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts."  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (quoting Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 66 (1st Dep't 2009)).  The NYCHRL does not alter "the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56."  Winston v. Verizon Servs. Corp., 633 F. Supp. 2d 42, 49 (S.D.N.Y. 2009).  A plaintiff asserting an NYCHRL claim still must show "by a preponderance of the evidence that she has been treated less well than other employees" due to plaintiff's protected status.  Williams, 61 A.D.3d at 78.

I.   Summary Judgment is Granted on Plaintiff's Discrimination Claims.

A.  Summary Judgment Is Granted to the Extent that Plaintiff Asserts Claims Regarding Her Salary and Training Opportunities.

The Complaint asserts that Kohn denied plaintiff permission to attend courses that would strengthen her technological expertise, while white and/or male counterparts were given superior training options.  (Compl. ¶¶ 18-20.)  It alleges that plaintiff's perceived performance deficiencies were due in part to her inability to get technical training.  (Compl. ¶ 21.)  It also asserts that her initial salary of $125,000 "was approximately $15,000 less than what similarly

situated white and/or male senior project managers were paid" when they first joined

Oppenheimer.  (Compl. ¶ 16.)

Plaintiff has essentially abandoned this claim at summary judgment, stating that

she now "only seeks relief on the claims arising from her termination," but adding that the denial

of training offers evidence of discriminatory intent.  (Opp. Mem. at 17 n.88.)  Defendants have

set forth undisputed evidence that Oppenheimer concluded that plaintiff's proposed course

selection both exceeded allotted costs and was irrelevant to her work responsibilities, but that

plaintiff's certain other course selections were approved.  (Def. 56.1 ¶¶ 51-59, 61-62; Pl. 56.1

Resp. ¶¶ 51-59, 61-62.)  As to the alleged salary disparities, there is no dispute that white males

in the same position earned higher salaries than plaintiff, but also no dispute that salary was

based on a new employee's "past experience and compensation."  (Def. 56.1 ¶¶ 13-21; Pl. 56.1

Resp. ¶¶ 13-21.)  Assuming arguendo that plaintiff could make out a prima facie case of

discrimination concerning her training options, the defendants have come forward with

unrebutted evidence setting forth a neutral, nondiscriminatory basis for any alleged disparity in

salary or training opportunities.  See Burdine, 450 U.S. at 252-53; Sassaman, 566 F.3d at 312.

Summary judgment is granted to Oppenheimer on plaintiff's Title VII and Section

1981 claims going toward training opportunities and salary.  Separately considering plaintiff's

claims against Kohn and Oppenheimer under the NYCHRL, because there is no evidence in

support of pretext or discriminatory intent, the defendants' summary judgment motion is granted

as to any claim involving employee training and salary.

> B.  Summary Judgment Is Granted as to Plaintiff's Allegedly Discriminatory
>       Termination.

The defendants contend that summary judgment should be granted in their favor

on plaintiff's discriminatory discharge claim because, assuming arguendo that plaintiff can make

out a prima facie case of discrimination, no reasonable jury could conclude that the stated grounds for plaintiff's termination were pretextual.  Plaintiff's opposition is grounded in speculation and conjecture, and fails to set forth evidence that would permit a reasonable juror to conclude that her termination was motivated by discrimination.

      1.  <u>Plaintiff Has Not Set Forth Evidence of Discriminatory Animus.</u>

Courts "must carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 448 (2d Cir. 1999).  At her deposition, plaintiff testified that there was a "possibility" that she "indirectly" heard discriminatory comments in the workplace.  (Tu. Dep. at 45.)  For example, she stated that Kohn "repeatedly" said that she "was too nice."  (Tu Dep. at 45.)  Kohn also told her that she was "meek or timid.  One of those words."  (Tu Dep. at 45.)  She testified that this was consistent with media stereotypes of Taiwanese people.  (Tu Dep. at 46.)  Plaintiff stated that she never heard discriminatory comments about her Taiwanese background or her gender, although there was one incident in which she overheard an employee – possibly a manager – "in the technology group" question whether a pregnant woman should have been promoted.  (Tu Dep. at 47-48.)  She also testified as follows:

> Q: Do you know any facts that would show that [Kohn] dislikes Asians?
>
> A: No.
>
> Q: Do you know any facts which should show that [Kohn] dislikes women?
>
> A: No.
>
> *     *     *

Q: And did you ever hear any [female colleagues] complain that
Dan discriminates against women?

A: Let's see.  No.

(Tu. Dep. at 288, 289.)  When asked to explain why she believed that Kohn treated her with

hostility, plaintiff replied, "Constant put downs.  When I'm in a team meeting with him, I've

talked and he just cut me off and didn't let me finish."  (Tu Dep. at 290.)  She elaborated:

"Cutting off is just when you're talking, maybe interrupt you and just talk on your behalf.  It's

basically I was trying to explain something, he didn't want to hear it.  . . .  So he not only cut me

off, he just ignored me for the rest of the meeting.  So anything that came up, he addressed

everyone else, pretending I wasn't there."  (Tu Dep. at 291.)  A co-worker of the plaintiff, Linda

Mui, testified at deposition that Kohn "did not like [plaintiff] from day one."  (Mui Dep. at 56.)

When asked whether Kohn "set you up to fail because your national origin was Taiwanese,"

plaintiff answered, "[t]hat, again, would be speculation on my part."  (Tu Dep. at 286.)

        First, assuming arguendo that the plaintiff had good reason to be offended by

Kohn's conduct toward her, the accounts of his conduct do not reflect discriminatory animus,

such that a reasonable juror could conclude that she was terminated for unlawful reasons.

Although certain "comments may be rude and derogatory, Title VII is not a 'general civility

code.'"  Bickerstaff, 196 F.3d at 452 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523

U.S. 75, 80 (1998)).  When conduct reflects "no hint as to any racial reason," and "[a]ttributing

the reason to race would be based entirely on speculation," a plaintiff does not defeat a motion

for summary judgment.  Id.; see also Magadia v. Napolitano, 2009 WL 510739, at *13 (S.D.N.Y.

Feb. 26, 2009) (a plaintiff cannot make out a prima facie case of discrimination by "reasoning

. . . [that] (1) something bad happened to him; (2) he is Filipino; (3) therefore the bad thing

happened because he is Filipino.").

As to the assertion that certain of Kohn's remarks embraced negative stereotypes of Taiwanese Americans, no reasonable juror could conclude that they reflect discriminatory animus relating to an adverse employment action.  "The Second Circuit has stated that whether a remark is probative of discrimination depends on whether the remark 'evinces a discriminatory state of mind' and on the temporal proximity between the remark and the alleged discriminatory behavior."  Gilmore v. Lancer Ins. Co., 2010 WL 87587, at *10 (E.D.N.Y. Jan. 7, 2010) (quoting Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007)).  "[A]mbiguous and vague comments clearly do not evince a discriminatory state of mind."  Id. (quotation marks and alteration omitted).  A comment may be "simply too vague, and too susceptible to any number of benign meanings, to constitute evidence of [workplace] discrimination."  Witkowich v. Gonzales, 541 F. Supp. 2d 572, 585 (S.D.N.Y. 2008).   At summary judgment, courts have held that remarks did not support an inference of discrimination when, for instance, a manager told an employee that he does not "fit the culture," Dorfman v. Doar Communications, Inc., 2005 WL 1861813, at *4 (E.D.N.Y. Aug. 2, 2005), female managers told a male plaintiff that he was "well built and things like that," Gilmore, 2010 WL 87587, at *10, and when a manager called the workplace promotion process a "beauty contest," Witkowich, 541 F. Supp. 2d at 585.  The comments here are similarly ambiguous and vague.  They do not constitute evidence that reflects discriminatory animus, and plaintiff herself acknowledged at her deposition that she had no basis from which to conclude that Kohn dislikes Asian Americans.

Lastly, plaintiff asserts that Kohn treated her "less favorably" than a male coworker of Indian descent, Ketan Patel, when interpersonal problems arose on an assignment.  (Pl. Mem. at 23.)  According to plaintiff, Kohn viewed Patel's problems as a "chemistry issue," whereas Kohn viewed plaintiff as a poor performer.  (Pl. Mem. at 23.)  She describes this as

direct evidence of disparate treatment.  However, both Patel and plaintiff received the same treatment from management: they were removed from the project that was the alleged source of conflict.  This is not evidence of discriminatory treatment.

Plaintiff has failed to come forward with any evidence to show that the stated reasons for her termination were a pretext for discrimination.  This reason alone is sufficient to grant summary judgment on plaintiff's discrimination claims.

2.   There Is No Evidence That Kohn Fabricated the Directive to Identify an Employee for Termination.

Plaintiff also asserts that no contemporaneous evidence shows that Kohn was required to select an employee for likely termination.  In essence, she posits that a reasonable juror may conclude that Kohn fabricated the instruction to name an employee for potential termination.  However, Oppenheimer Senior Vice President Laura Leitzinger states that she orally directed Kohn to do so.  (Leitzinger Aff't ¶ 7.)  Kohn makes the same representation. (Kohn Aff't ¶ 39.)  In particularly, Leitzinger states, "I specifically directed Dan [Kohn] to select one member from his team with the most performance issues."  (Leitzinger Aff't ¶ 7.)

Plaintiff has not come forward with any evidence to support her assertion that Kohn fabricated the instruction.  "[I]t is well established that 'conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.'"  Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 370 n.3 (2d Cir. 2003) (quoting Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)).  Moreover, there is no dispute that plaintiff's eventual termination came after an October 30, 2008 e-mail in which the CEO of Oppenheimer announced that employee layoffs would occur in the near future.  (Def. 56.1 ¶ 116; Pl. 56.1 Resp. ¶ 116.)  This companywide announcement, along with the evidence that Leitzinger orally directed Kohn to suggest employees for termination, constitutes unrebutted evidence explaining

the origins termination.  Plaintiff offers only a hypothesis in response.  This is insufficient to defeat defendants' summary judgment motion.

       3.  <u>Kohn's Negative Reviews Are Not Evidence of Discrimination.</u>

Plaintiff contends that Kohn's reviews of her performance were false, pretextual and motivated by discriminatory animus.  According to plaintiff, prior to being supervised by Kohn, her review was "very strong" in 2006 and "less favorable but still strong" in 2007, but that when Kohn began supervising plaintiff, she "suddenly was perceived as a poor performer." (Opp. Mem. at 21.)  Plaintiff also contends that contemporaneous evidence does not support Kohn's stated rationales for removing her from certain projects, and that the reviews of her co-workers became more negative when they were solicited by Kohn.

The increasingly negative reviews of plaintiff's performance do not, in themselves, support an inference of discrimination.  The negative reviews themselves are facially neutral.  "It is axiomatic that mistreatment at work . . . through such concrete deprivations as being fired or being denied a promotion[ ] is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."  <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001); <u>see also</u> <u>Moses v. City of New York</u>, 2007 WL 2600859, at *2 (S.D.N.Y. Aug. 28, 2007) ("Plaintiff alleges only facially neutral treatment, and she has put forth no 'circumstantial or other basis' for inferring that her reviews, though clearly negative, were in fact discriminatory.").  Absent evidence of discriminatory animus, no reasonable juror could conclude that Kohn's performance reviews were pretextual.

      C.  Summary Judgment Is Granted as to Plaintiff's NYCHRL Discrimination
         <u>Claim.</u>

Separately reviewing plaintiff's discrimination claim under the NYCHRL, <u>Loeffler</u>, 582 F.3d at 278, plaintiff has not set forth evidence to show that Kohn and/or

Oppenheimer discriminated against her on the basis of race, sex or national origin.  As noted, the record does not include evidence by which a reasonable juror could draw an inference of discrimination.  Summary judgment is therefore granted to the defendants.

## II.   Summary Judgment is Granted on Plaintiff's Retaliation Claims.

Defendants move for summary judgment in their favor on plaintiff's retaliation claim, arguing that she can neither make out a prima facie case nor prove pretext.  "To establish a prima facie case of retaliation, [a plaintiff] must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).  "The plaintiff's burden in this regard is de minimis, and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."  Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quotation marks omitted).  Once a prima facie case is established, the defendant must articulate a legitimate reason for the adverse employment action, after which the burden shifts back to the plaintiff to set forth evidence that retaliation was "a substantial reason" for the adverse action. Id.

### A.   Plaintiff's July 2007 Oral Complaint Does Not Support a Retaliation Claim.

In July 2007, plaintiff orally complained to non-party Jodi Pullman that Kohn practiced "illegal discrimination" by not approving her technical training request.  (Tu Dep. Tr. at 286-87.)  "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."  Kaytor v. Elec. Boat Corp., 609

F.3d 537, 552-53 (2d Cir. 2010).  Here, plaintiff orally complained of discrimination

approximately 18 months prior to termination, and no evidence supports an inference that her

comment was relayed to Kohn or any other relevant decision-maker.  Plaintiff does not cite this

conversation as evidence in support of her retaliation claim.  (Opp. Mem. at 18-19, 23-24.)

Without more, no reasonable juror could conclude that this conversation is evidence of

retaliation.

> B.  Plaintiff's August 2008 Discussion with Human Resources Was Not Protected
> Activity.

Plaintiff testified that in August 2008, she spoke to Christine Calandrella, who

worked in human resources and was plaintiff's coach in a "leadership engine training program . .

. ."  (Tu Dep. at 307.)  Plaintiff "talked to her about the emotional abuse" from Kohn and "what's

going on . . . ."  (Tu Dep. at 309.)  She described "constant put downs" from Kohn.  (Tu Dep. at

310.)  Plaintiff testified that she didn't "remember the exact details" of what she told Calandrella,

except that there were "put downs," Kohn "[d]id not acknowledge me," and "there's this

discrepancy going on."  (Tu Dep. at 310.)  Calandrella told plaintiff to speak further with HR

about the Kohn situation.  (Tu Dep. at 309, 311-12.)  At her deposition, plaintiff could not recall

whether she used the word "discrimination" or cited disparate treatment based on gender, and

stated that she did not discuss discrimination regarding her national origin.  (Tu Dep. at 312.)

Plaintiff's oral statement to Calandrella is not protected activity that gives rise to a

retaliation claim.  "The term 'protected activity' refers to action taken to protest or oppose

statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.

2000).  While an informal complaint to management may be protected activity, see, e.g., Slow v.

Prestige Merchandising Co., 2011 WL 4373516, at *3 (E.D.N.Y. Sept. 19, 2011), the plaintiff

offers no evidence that she communicated a belief that Kohn was discriminating against her.

Absent such evidence, plaintiff's statements to Calandrella do not support a retaliation claim.
See, e.g., Sharpe v. MCI Commc'ns Servs., Inc., 684 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2010)
(Chin, J.) (plaintiff did not engage in protected activity when his complaints made no mention of
discrimination); Rojas v. Roman Catholic Diocese of Rochester, 783 F. Supp. 2d 381, 413
(W.D.N.Y. 2010) (plaintiff's complaint that supervisor was "making her miserable" did not
constitute protected activity), aff'd, 660 F.3d 98 (2d Cir. 2011); Taylor v. Family Residence &
Essential Enters., Inc., 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008) (refusal to change
work shifts and complaints about favoritism were not protected activities); Bain v. Wal-Mart
Stores, Inc., 585 F. Supp. 2d 449, 453-54 (W.D.N.Y. 2008) (complaint about a manager's "tone"
and turning "red in the face" while he "puffed up his chest" and told plaintiff to "shut up and
count your till" was not a protected activity).

      C.   As to the October and December 2008 Complaints, Plaintiff Has Not Set
Forth Evidence of Causation.

      On October 31, 2008, one day after Oppenheimer announced imminent employee
layoffs, plaintiff contacted Patrick Schneider, an assistant vice president who worked in HR. [2]
(Schneider Aff't ¶ 2 & Ex. A; Tu Dep. at 316.)  They spoke on November 5, in a conversation
that took place via telephone.  (Schneider Aff't ¶ 7.)  Tu told Schneider about "emotional abuse,"
"illegal discriminatory behavior," "constant put downs," and "[j]ust everything that I could think
of."  (Tu Dep. at 317-18.)  On December 9, plaintiff made a second complaint to Schneider, this
time in writing.  (Schneider Aff't ¶ 11.)  The written complaint specified discrimination on the

---

[2] Plaintiff testified at deposition that she spoke on the phone with Schneider "probably like after October 21, 24."
(Tu Dep. at 316.)  She also testified that "officially on the calendar, I had a conversation with Pat on October 31."
(Tu Dep. at 316.)  Plaintiff's opposition memo does not mention the discrepancy between the dates that she listed in
her deposition and those cited by Schneider.  For reasons that will be explained, even accepting the version set forth
in plaintiff's testimony with its imprecision as to the conversation dates, plaintiff still fails to make out a prima facie
case for causation.

basis of gender, race, national origin and religion, as well as pay discrimination and retaliation. (Schneider Aff't ¶ 11.)

    If no direct or circumstantial evidence reflects retaliatory motive, a causal connection may be shown at the prima facie stage "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).  In Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001), the Second Circuit stated that "an inference of retaliation does not arise" when an adverse employment action was "the ultimate product" of "an extensive period of progressive discipline."  There, the plaintiff engaged in protected activity in the form of an EEOC discrimination complaint and experienced an adverse employee action in the form of probation and termination.  Id.  The defendant, however, had "diminished [plaintiff's] job responsibilities a full five months prior to his filing of the EEOC charges."  Id. (emphasis in original).  Because timing was the sole evidence of plaintiff's retaliation claim and "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity," the Second Circuit in Slattery affirmed the district court's summary judgment grant.  Id.; see also Lessambo v. PricewaterhouseCoopers, L.P., 2010 WL 3958787, at *12 (S.D.N.Y. Sept. 27, 2010) (at summary judgment, plaintiff failed to offer evidence of causal connection when plaintiff was informed of unsatisfactory performance and had "numerous conflicts" with managers prior to engaging in protected activity); Dixon v. Int'l Fed'n of Accountants, 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010) (concluding at summary judgment that plaintiff "was subjected to repeated critiques and complaints about her management and performance skills before she ever lodged any complaints about discrimination and, as such, her retaliation claim must be dismissed."); Luxenberg v. Guardian Life Ins. Co., 2004 WL 385116, at *5 (S.D.N.Y.

Mar. 2, 2004) (plaintiff failed to defeat summary judgment as to causation when, prior to protected activity, he already had been removed from positions of responsibility and given limited work duties).

As plaintiff has acknowledged and has been previously discussed, plaintiff's reviews had become increasingly negative prior to her communications with Schneider.  She had twice been removed from projects due to performance-based concerns by managers other than Kohn.  Indeed, by the time that she spoke to Schneider, during an employee review in fall 2008, Kohn had informed plaintiff that she was in danger of losing her job.  (Tu Dep. at 158.)  Plaintiff already understood on the basis of her review and her overall performance rating of "four" that she might "[p]ossibly get terminated.  Possibly not."  (Tu Dep. at 202-03.)  These discussions and plaintiff's knowledge of possible termination predate plaintiff's complaints to Schneider. They also were just one episode in a long-running history of critical reviews from Kohn, which drew in part from feedback concerning plaintiff from other employees and managers at Oppenheimer.  As with Slattery and its progeny, the plaintiff's critical performance reviews and diminutions of responsibility began well before she engaged in protected activity, and, in this case, culminated with the adverse employment action of plaintiff's termination.  While plaintiff asserts in opposition that she does not rely solely on the timing of her termination, her only additional evidence is an assertion that Leitzinger and Kohn knew about her complaint to Schneider.  Assuming the truth of this assertion, which defendants dispute, the evidence of causation would still be anchored to the timing of her complaint to Schneider and subsequent termination.  In light of Slattery, the plaintiff fails to make out a prima facie case for causation.

Because the plaintiff has not set forth evidence that would permit a reasonable juror to conclude that there was a causal connection between her protected activity and her termination, plaintiff has failed to establish a prima facie case of retaliation.

### D. Summary Judgment Is Granted as to Plaintiff's NYCHRL Retaliation Claim.

A plaintiff need not set forth evidence of an adverse employment action under the NYCHRL. Williams, 61 A.D.3d at 70-71. A plaintiff need merely show that the complained of conduct was "reasonably likely to deter a person from engaging in protected activity." Id. at 71; accord Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010) (discussing NYCHRL retaliation standard). The plaintiff has not set forth evidence showing that, after her complaint to Schneider, the defendants consequently subjected her to conduct that was reasonably likely to deter a person from a protected activity. Indeed, the plaintiff's opposition memo includes no discussion of evidence supporting her claim under the NYCHRL, as opposed to Title VII. Summary judgment is granted to the defendants on the NYCHRL retaliation claim.

CONCLUSION

The defendants' motion for summary judgment is granted. The Clerk is directed to terminate the motion (Docket # 18) and enter judgment for the defendants.

SO ORDERED.

Dated: New York, New York
     February 15, 2012

                           P. Kevin Castel
                      United States District Judge